# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2529

_____

COMSAT Corporation, a Washington    *
D.C. corporation,    *
   *
        Plaintiff-Appellant,    *
   *   Appeal from the United States
     v.    *   District Court for the District
   *   of Minnesota.
St. Paul Fire and Marine Insurance    *
Company, a Minnesota Corporation,    *
   *
        Defendant-Appellee.    *

_____

Submitted: March 12, 2001
Filed: April 10, 2001

_____

Before LOKEN, MURPHY, and BYE, Circuit Judges.

_____

MURPHY, Circuit Judge.

COMSAT Corporation (COMSAT) brought this diversity action for breach of an insurance contract against St. Paul Fire & Marine Insurance Company (St. Paul) after St. Paul refused to defend it in a lawsuit. Both parties filed motions for summary

judgment, and the district court[1] granted St. Paul's motion and dismissed COMSAT's complaint. After judgment was entered in St. Paul's favor, COMSAT wrote to the court requesting leave to file a motion for reconsideration. The court denied the request. COMSAT appeals from the judgment and the order denying its request. We affirm.

COMSAT, a provider of commercial satellite services, formed a consortium named Intelsat to create a global communications satellite service. Intelsat operates under a 1971 agreement entered into by a number of countries, and COMSAT is the signatory party to the agreement for the United States. Alpha Lyracom Space Communications, Inc. (Alpha) began to develop a satellite system in 1984 to compete with Intelsat in South America. In order to succeed, Alpha needed Intelsat consultation which it alleged could not be obtained because of COMSAT's anticompetitive behavior.

Alpha sued COMSAT in the Southern District of New York in 1989 for anticompetitive conduct in violation of Sections 1 and 2 of the Sherman Act and for interference with contractual relations. Alpha's complaint was dismissed on the grounds that COMSAT was immune from liability as a signatory of Intelsat. See Alpha Lyracom Space Communications, Inc. v. Communications Satellite Corp., No. 89 CIV. 5021, 1990 WL 135637, at *8 (S.D.N.Y. Sept. 13, 1990). The Second Circuit affirmed the dismissal of the complaint, but remanded so that Alpha could amend its pleading in respect to COMSAT's role as a common carrier. See Alpha Lyracom Space Communications, Inc. v. Communications Satellite Corp., 946 F.2d 168, 176 (2d Cir. 1991). COMSAT had been insured by Aetna and Hartford

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

insurance companies, and they eventually paid COMSAT $4.375 million for its successful defense of Alpha's original complaint.

Before Alpha filed its amended complaint in New York, COMSAT purchased general commercial liability insurance from St. Paul, to be effective October 1, 1990. The St. Paul policy provided coverage for personal injury and advertising injury liability occurring "while this agreement is in effect." Personal injury included "libel or slander" and "written or spoken material made public which belittles the products or work of others[.]" Advertising injury included such conduct, as well as the "unauthorized taking of advertising ideas or style of doing business[.]" The policy had a material "first made public" exclusion which stated that St. Paul would not cover personal or advertising injury that "results from written or spoken material if the material was first made public before this agreement went into effect." Finally, the policy required that St. Paul defend COMSAT in "any claim or suit for covered injury or damages."

On November 13, 1991, after the St. Paul policy was in effect, Alpha filed its amended complaint which included allegations that COMSAT was a common carrier. COMSAT tendered the defense of the case to St. Paul on June 4, 1993. James Craig, a claims attorney for St. Paul, notified COMSAT in July 1993 that coverage was being denied and that St. Paul would not take up the defense because the conduct alleged in the amended complaint had not occurred while St. Paul's policy was in effect. Craig also stated that Alpha had not alleged bodily injury, property damage, or advertising injury covered by the St. Paul policy. During the process of reaching his conclusions, Craig reviewed both of Alpha's complaints, the insurance policy, and the letter from COMSAT tendering the suit. No other information had been submitted by COMSAT in support of its tender.

After St. Paul denied coverage, COMSAT and Alpha engaged in discovery in the New York case. In response to interrogatories, Alpha stated that it was alleging that COMSAT had disparaged it after the St. Paul policy became effective. COMSAT did not make St. Paul aware of Alpha's answers, however, until six years after St. Paul had denied coverage and two years after COMSAT had successfully defended Alpha's action in New York.

On June 24, 1999, COMSAT commenced this diversity action against St. Paul for breach of contract. It alleged that St. Paul had owed a duty to defend it in Alpha's renewed action in the Southern District of New York. COMSAT moved for summary judgment. St. Paul filed a cross motion for summary judgment and moved for a Fed.R.Civ.P. 56(f) continuance if summary judgment were not granted in its favor. While those motions were pending, COMSAT moved to compel discovery of claims attorney Craig. St. Paul moved for a protective order and sought a hearing. United States Magistrate Judge Jonathan Lebedoff held a hearing and then allowed COMSAT to take Craig's deposition.

The district court granted summary judgment to St. Paul, dismissed COMSAT's complaint, and dismissed St. Paul's Rule 56(f) motion as moot. After comparing Alpha's original and amended complaints, the district court concluded that the amended complaint did not allege any conduct other than that alleged in the first complaint. The court found that the "pattern and practice" language in the amended complaint had not put St. Paul on notice that Alpha was asserting conduct covered by its policy. The court also noted that Alpha's responses to interrogatories in the action on the amended complaint had not been furnished to St. Paul until after COMSAT filed this case. St. Paul thus had had no duty to investigate or defend COMSAT in the New York case. Judgment was entered on May 4, 2000, and seven days later COMSAT wrote to the

court pursuant to Local Rule 7.1(g)[2] requesting leave to move for reconsideration and notifying the court for the first time of the new evidence from Craig's deposition. The district court issued an order denying the request. COMSAT then filed a timely notice of appeal on May 31, 2000 from both the judgment and the order.

On appeal COMSAT argues that the district court erred by granting summary judgment to St. Paul, by denying it summary judgment, and by not permitting it to move for reconsideration. It seeks judgment in its favor or the opportunity for further discovery and introduction of new evidence. COMSAT asserts that St. Paul had a duty to defend Alpha's amended complaint because that pleading alleged personal and advertising injury covered by St. Paul's policy and conduct occurring after the policy went into effect. It points to Alpha's interrogatory responses in the New York case and Craig's deposition testimony to support its argument that conduct was alleged that took place during the policy period. COMSAT also disputes the relevance of the policy exclusion for material first made public which excludes anything published before the policy became effective. St. Paul responds that the amended complaint did not allege any conduct that occurred after its policy went into effect because the new complaint alleged the same acts as had the original. It also argues that even if the alleged injuries occurred after the policy was effective, they are not covered by the terms of the policy and would in any event come under the material first made public exclusion.

---

[2]The rule provides that "[m]otions to reconsider are prohibited except by express permission of the Court, which will be granted only upon a showing of compelling circumstances. Requests to make such a motion . . . shall be made by letter to the Court . . . ." LOCAL RULE 7.1(g)

The district court's grant of summary judgment and its determination of Minnesota law[3] are reviewed de novo.  See Allstate Ins. Co. v. Burrough, 120 F.3d 834, 838 (8th Cir. 1997).  Summary judgment is appropriate if there is no genuine issue of material fact or if the moving party is entitled to judgment as a matter of law.  See id.  The district court's denial of a request for leave to file a motion for reconsideration may be treated as the "functional equivalent of a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e)," see Dubose v. Kelly, 187 F.3d 999, 1002 (8th Cir. 1999), and it should be reviewed for an abuse of discretion.  See Beverly Hills Foodland Inc. v. Union, 39 F.3d 191, 194 n.3 (8th Cir. 1994).

COMSAT argues that Alpha's amended complaint alleged advertising injury and personal injury that occurred after the policy went into effect and that these allegations gave rise to a duty to defend or at least to investigate the allegations.  It further argues that even if it was not clear from the complaint that St. Paul had a duty to defend, discovery showed that Alpha had alleged acts that occurred after the effective date of the policy.  Finally, COMSAT contends that Craig's deposition testimony shows that even if it had provided St. Paul with Alpha's answers, he would have incorrectly concluded that there was no duty to defend.  St. Paul responds that the language in the amended complaint which COMSAT cites would not have led it to conclude that covered conduct was alleged because the same overt acts were pleaded as in the original complaint.  It also points out that Alpha's interrogatory answers were not presented to St. Paul until six years after COMSAT's claim was tendered and argues that the information from Craig's deposition testimony would not affect the outcome even if it were properly before the court.

---

[3]The parties agree that the substantive issues in this case are governed by Minnesota law.

Under Minnesota law a duty to defend arises "if any part of the claims asserted against [the insured] in the underlying case 'arguably' falls within the scope of coverage," and the burden of showing that all parts of the cause of action fall clearly outside the scope of coverage is on the insurer. Ross v. Briggs & Morgan, 540 N.W.2d 843, 847 (Minn. 1995); see Jostens, Inc. v. Mission Ins. Co., 387 N.W.2d 161, 165-66 (Minn. 1986). If an insurer has no knowledge to the contrary, it can make an initial determination, whether to defend or to conduct a further investigation, from the facts in the complaint. See Garvis v. Employers Mut. Cas. Co., 497 N.W.2d 254, 258 (Minn. 1993). The insurer's duty to defend is to be determined as of the time the claim was tendered to it by the insured, and it is the insured's obligation to provide information that would trigger coverage. See Jostens, 387 N.W.2d at 166. If the insured fails to provide such information, the insurer "need not speculate about facts that may trigger its duty to defend." St. Paul Mercury Ins. Co. v. Dahlberg, Inc., 596 N.W.2d 674, 677 (Minn. Ct. App. 1999).

COMSAT relies on language in Alpha's amended complaint to establish that St. Paul should have been aware that the suit arguably fell within the scope of the policy:

> [t]he . . . overt acts . . . of the monopolization . . . include the following course of conduct . . . . (b) COMSAT and other . . . companies have combined, conspired, and agreed to refuse to do business with competing satellite systems . . . . This conspiracy has been in effect continuously from 1984 through the present . . . . (f) COMSAT has hindered and interfered with [Alpha's efforts] to do business in Chile . . . . This conduct is part of a pattern and practice of COMSAT.

COMSAT also relies on Alpha's prayer for "a permanent injunction enjoining and prohibiting COMSAT from engaging in the violations of law set forth hereinabove." St. Paul responds that the phrases "course of conduct" and "pattern and practice" in the complaint refer to the same overt acts alleged in the original complaint and again in the

amended complaint. All acts must therefore have occurred before its policy went into effect, and it would have only been speculation for it to surmise what new facts might possibly have been included in "course of conduct" or "pattern and practice."

The district court did a side by side comparison of both complaints[4] and determined that although the amended complaint slightly changed the wording of the allegations, it did not allege any new overt acts of disparagement but only clarified COMSAT's position as a common carrier.[5] Our own de novo comparison of the complaints leads us to the same conclusion.

Since no new acts of disparagement were alleged in the amended complaint, the language in both complaints about "course of conduct" and "pattern and practice" referred to the same overt acts described in both complaints and the language did not arguably refer to actions after the policy went into effect. St. Paul was not required to

[4]COMSAT argues that the district court erred in stating that claims attorney Craig had done a side by side comparison of the two complaints. It bases this argument upon Craig's failure to state explicitly in his denial letter or his deposition that he had done a side by side comparison. The insurer's duty is to analyze the pleadings and all other information provided by the insured. Whether or not the district court was precisely accurate in using the language "side by side" for Craig's review is not of material significance.

[5]COMSAT also contends that the district court's statement that the amended complaint "does not establish that it engaged in any conduct after the policy went into effect" shows that it used the standard for indemnity rather than for the duty to defend. This argument is without merit because the court correctly cited and applied the controlling law of Minnesota. See Garvis, 497 N.W.2d at 258.

The parties also disagree about whether the amended complaint alleged an advertising injury or personal injury and whether there was proximate cause. Since none of the alleged conduct arguably occurred while the policy was in effect, we need not resolve this dispute or discuss the exclusion for material first made public.

speculate as to what other acts Alpha might have intended to include in the allegations. See Dahlberg, 596 N.W.2d at 677. Moreover, the phrase "continuously from 1984 through the present" refers to a conspiracy which does not arguably fall within the scope of the St. Paul policy. Although COMSAT argues that Alpha's request for a permanent injunction should have been interpreted by St. Paul to allege ongoing violations covered by its policy, conspiracy was the only ongoing violation alleged in the complaints and no new overt acts were pleaded in the amended version. St. Paul was therefore entitled to conclude that the request for injunctive relief was to enjoin the previously alleged conspiracy and could not arguably be aimed at preventing other advertising or personal injury. We conclude that the amended complaint did not allege conduct arguably occurring during the policy period, and St. Paul was not required under its policy to defend the lawsuit brought by Alpha.

COMSAT also argues that even if the complaint alone did not raise a duty to defend, that duty was established by Alpha's answers to its interrogatories. St. Paul responds that COMSAT did not furnish those answers until six years after it had tendered the defense of Alpha's renewed action. It also argues that the answers do not even raise the duty to defend. The initial burden is on the insured to provide information that would trigger coverage. See SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 311 (Minn. 1995). COMSAT had these answers for six years and did not provide them to St. Paul until after it filed this case in 1999. COMSAT failed to meet its burden to provide evidence to the insurer in a timely manner. See Dalhberg, 596 N.W.2d at 678 (no duty to defend where insured failed to present extrinsic evidence until two years after coverage was denied).

Finally, COMSAT argues that the deposition of claims attorney Craig shows that Alpha's answers to the interrogatories would not have changed his mind and that Craig did not understand the suit COMSAT tendered to him for defense. St. Paul responds that Craig's deposition is irrelevant because it does not change the fact that he did not

have Alpha's answers when he denied coverage. Although COMSAT had the deposition results eighteen days before the court issued its ruling, it took no action to ask for a continuance or to supplement the record until after judgment was entered. This evidence was not placed before the district court in a timely fashion, and the court did not abuse its discretion by denying COMSAT's request to file a motion for reconsideration so that it could present the evidence. See Chism v. W.R. Grace & Co., 158 F.3d 988, 992 n.4 (8th Cir. 1998). Even if the material from the Craig deposition were part of the record, it would not affect the outcome because it was not given to St. Paul when COMSAT tendered the defense or for many years thereafter. See Jostens, 387 N.W.2d at 166 (determination of duty to defend is based on the facts present at the time suit tendered).

The amended complaint did not allege any conduct that arguably occurred during St. Paul's policy period, and COMSAT did not timely present extrinsic evidence to the contrary. The district court correctly concluded that St. Paul had no duty to defend COMSAT in Alpha's New York action, and it did not abuse its discretion in denying leave to file a motion for reconsideration. We affirm the judgement.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-