# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

—————

No. 01-6004EM

—————

| | |
|---|---|
| In re: Apex Oil Company, | * |
| | * |
| Debtor. | * |
| | * |
| Apex Oil Company, | *   Appeal from the United States |
| | *   Bankruptcy Court for the |
| Appellant, | *   Eastern District of Missouri |
| | * |
| v. | * |
| | * |
| Artoc Bank & Trust Limited, | * |
| | * |
| Appellee. | * |

—————

Submitted: June 5, 2001
Filed: July 25, 2001

—————

Before KRESSEL, William A. HILL and O'BRIEN[1], Bankruptcy Judges.

—————

O'BRIEN, Bankruptcy Judge.

---

[1] The Honorable Dennis D. O'Brien, United States Bankruptcy Judge for the District of Minnesota, sitting by designation.

Apex Oil Company (the "Debtor") appeals from four bankruptcy court[2] orders and a summary judgment entered in favor of Artoc Bank & Trust Limited ("Artoc"), allowing Artoc a claim in the Debtor's bankruptcy case in the amount of $3,461,850.[3] We affirm.

# I
## STATEMENT OF THE CASE

During the 1970's, Artoc was a secured lender to Uni Refining, Inc. ("Uni"). Artoc held an assignment of Uni's accounts receivable and a security interest in Uni's inventory. Notice of the assignment was placed on Uni's invoices to its customers along with instructions for them to send invoice payments to Artoc. In the course of their relationship, Uni encountered financial difficulties which caused it to file bankruptcy in February 1981. The Debtor was both a customer and vendor of Uni. Shortly before Uni filed bankruptcy, the Debtor offset against two invoices it had received from Uni, amounts owing by Uni to the Debtor. The first offset occurred on December 18, 1980 in the amount of $ 390,648.44, and the second on December 31, 1980, in the amount of $1,334,182.81.

After Uni's bankruptcy, Artoc sued the Debtor and others in a Texas federal district court alleging that the offsets were in violation of its rights as assignee of Uni's receivables. During the course of that litigation, the Debtor filed this Chapter 11 bankruptcy case in December 1987. Artoc filed a proof of claim in the case based on the alleged wrongful offsets, and the Debtor objected to the claim. The Debtor subsequently filed a motion for summary judgment on the objection, based on alleged

---

[2] The Honorable James J. Barta, United States Bankruptcy Judge for the Eastern District of Missouri.

[3] $1,700,000 of this amount represents principal to which 10% prepetition interest is to be added. The remaining $1,761,850 is allowed attorneys' fees.

lack of notice to the Debtor of the assignment and estoppel. In 1991, the bankruptcy court ruled in the Debtor's favor on the notice issue, without deciding the estoppel issue. The district court affirmed the bankruptcy court also without considering the estoppel issue.

In September 1992, the Eighth Circuit Court of Appeals reversed the district court and ruled for Artoc on the notice issue. The Court of Appeals declined to address the merits of the Debtor's summary judgment motion on the issue of estoppel, saying only that it expressed no opinion on the matter. The Court remanded the proceeding to the district court with instructions that it remand to the bankruptcy court for entry of judgment in favor of Artoc unless the Debtor prevailed on the estoppel issue. On petition for rehearing, the Court later added the following instruction:

> If judgment is entered against Apex, the Bankruptcy Court should first consider the issues of prejudgment interest and attorneys' fees. These issues are not concluded by this opinion, and we express no view on their merits.

(Appellant's App. at 537-38).

Artoc filed its motion for summary judgment on all issues, including the Debtor's estoppel defense, in March 1993 in the remanded proceeding. The Debtor responded with a cross-motion for partial summary judgment on the issues of interest and attorneys' fees, and the Debtor initiated discovery relating to all issues, including its estoppel defense. Artoc opposed any discovery relating to estoppel, but the bankruptcy court granted the Debtor's motion to compel discovery in April 1993. Artoc then moved for leave to appeal the bankruptcy court's discovery order and, in November 1993, the bankruptcy court stayed all further proceedings while that appeal remained pending in the district court. In the meantime, Artoc filed a petition in the district court on June 29, 1993 for removal of the bankruptcy case to the district court

based on bankruptcy judge's alleged bias and prejudice against Artoc. In April 1995, the district court denied Artoc's motion for leave to appeal the bankruptcy court's April 1993 discovery order, but directed the bankruptcy judge to disqualify himself from the proceeding.[4]

In October 1996, the bankruptcy court, Judge James Barta, held a status conference in the proceeding. The Debtor had filed a motion to supplement the record with additional facts on the issue of estoppel. The bankruptcy court encouraged the parties to supplement their earlier briefs with updated case law, provided Artoc an opportunity to respond to the Debtor's request to present new facts on the estoppel defense, and indicated that he would thereafter issue a written order deciding the request and memorializing other procedural matters dealt with in the status conference. Artoc filed its response in opposition to the Debtor's request to present additional facts on the estoppel issue on October 28, 1996. No further order was issued by the bankruptcy court regarding the proceeding, however, until September 1, 1999 when Judge Barta entered his Order denying Apex's Motion for Summary Judgment and granting Artoc's Motion for Summary Judgment.

The Debtor filed its Motion to Alter or Amend Judgment on September 13, 1999, whereby the Debtor: sought vacation of the judgment and leave to present additional facts on its estoppel defense; argued that Artoc had failed to establish that it had sustained damages; argued that the court had erred in providing for calculation

---

[4] The bankruptcy judge disclosed to the parties that he had earlier represented Apex in connection with the subject matter of the disputed claim and the district court agreed with the recommendation of a magistrate that the judge be disqualified because his impartiality might reasonably be questioned as a result. The district court ruled that no actual bias or prejudice had been shown. The court determined that the proceeding should be reassigned to another bankruptcy judge under the circumstances, rather than be removed to the district court. (Appellant's App. at 108-09).

of prejudgment interest by compounding it daily; and, argued that "The action of the Eighth Circuit in *sua sponte* granting judgment for Artoc deprived Apex of its right to a hearing - if not a trial - on the other defenses that it had pleaded when it moved for summary judgment in 1990." (Appellant's App. at 270-72). By separate motion filed on November 9, 1999, the Debtor for the first time requested 28% credit against the amount of Artoc's claim as otherwise finally allowed.

On December 18, 2000, the bankruptcy court issued three separate orders: one, denying the Debtor's motion to alter or amend the judgment and to allow the Debtor to present additional facts on the issue of estoppel, but amending the judgment to allow only simple interest on prepetition attorneys fees; a second, denying the Debtor's motion for 28% credit against Artoc's claim; and the third, determining and allowing the amount of Artoc's attorneys fees as part of its allowed proof of claim. The Debtor appeals from the court's September 1, 1999 order and judgment, and from the three December 18, 2000 orders.

## II
## ANALYSIS

**Supplementing The Factual Summary Judgment Record On Estoppel.**

We review the bankruptcy court's denial of the Debtor's motion to supplement the factual summary judgment record on estoppel under the abuse of discretion standard. Williams v. Little Rock Municipal Water Works, 21 F.3d 218, 224 (8th Cir. 1994). We find no abuse of discretion.

Trial courts have broad discretion in deciding whether to permit supplementation of the summary judgment record, and courts of appeal will not interfere with a judge's exercise of discretion in this area except when abused. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 894-98 (1990). In the Eighth Circuit, a trial court's exercise of

5

its discretion in refusing to accept late-filed summary judgment evidence will not be disturbed on appeal even where a procedurally adequate motion had been filed before entry of summary judgment. African American Voting Rights Fund, Inc. v. Villa, 54 F.3d 1345, 1350 (8th Cir. 1995) (not an abuse of discretion to deny a party leave to submit supplemental affidavits 31 days after summary judgment record closed where party retained new counsel); Metropolitan Fed. Bank of Iowa F.S.B. v. W.R. Grace & Co., 999 F.2d 1257, 1259 (8th Cir. 1993).

The Debtor filed its motion for summary judgment on its objection to Artoc's claim in the bankruptcy court on February 27, 1990. The motion was based on the Debtor's alleged lack of notice of Artoc's assignment of the accounts that it had offset against, and based on the defense of estoppel. Regarding estoppel, the motion pled:

### ARTOC'S CLAIMS ARE BARRED BY ESTOPPEL

The summary judgment evidence shows that, as a matter of law, Artoc had actual notice that Apex and other account debtors of Uni Refining were paying invoices directly to Uni and were engaging in the industry practice of "net-outs", i.e. the set-off of mutual obligations. The summary judgment evidence also shows as a matter of law that Artoc Bank did not object to the direct payments and set-offs and took no action to stop them.

As a matter of law, Artoc is estopped to contend that Apex should not have set-off its invoices against amounts it owed to Uni.

(Appellant's App. at 215-16). In remanding the proceeding in September 1992, the Court of Appeals held:

III.

6

Finally, Apex argues that even if Artoc gave sufficient notice of the assignment, it is estopped to recover on the invoices since it knew Apex was engaging in setoffs with Uni and took no action to stop this practice. Neither the Bankruptcy Court nor the District Court reached this issue. They did not determine what the law requires to establish the defense of estoppel, nor did they find the facts to refute or support it. Therefore, the issue is not properly before us. We leave it for development on remand to the Bankruptcy Court.

## IV.

We reverse and remand to the District Court. That Court is instructed to vacate its judgment and remand the cause to the Bankruptcy Court with instructions to enter judgment for Artoc, unless it determines that Artoc is estopped to recover on the debt. As to the merits of the estoppel theory, we express no view.

Artoc Bank & Trust Limited v. Apex Oil Company, 975 F.2d 1365, 1370 (8th Cir. 1992).

Artoc filed its motion for summary judgment on February 4, 1993 in the remanded proceeding. Regarding estoppel, the motion pled:

Partial summary judgment on the affirmative defense of estoppel is compelled by the decision of the United States Court of Appeals for the Eighth Circuit in Artoc Bank & Trust, Ltd. v. Apex Oil Co., 975 F.2d 1365 (8th Cir. 1992), in conjunction with the material facts not in dispute regarding the estoppel defense.

(Appellee's App. at 2)

7

The Debtor argues that the bankruptcy court abused its discretion in failing to grant the Debtor's motion to supplement its response to Artoc's February 4, 1993 motion for summary judgment with additional facts related to estoppel developed by the Debtor after remand from the Court of Appeals in 1992.  The Debtor argues in its brief filed in this appeal:

> The bankruptcy court abused its discretion by denying Apex the opportunity to supplement its opposition to Artoc's Motion for Summary Judgment. (App. at 339). By denying Apex's request for leave to supplement, the bankruptcy court effectively prevented Apex from presenting additional facts and raising additional bases for its estoppel argument.  (App. at 72-73; 270). Those facts would buttress Apex's claim that Artoc was barred by quasi-estoppel from collecting on its claim...

(Appellant's Brief at 6).  The Debtor argues on that:

> ...Apex filed its original Motion for Summary Judgment in this matter on February 27, 1990. (App. at 210-68). In that motion, Apex asserted that it was entitled to summary judgment for two reasons: (1) because it did not get proper notice of Uni's  assignment to Artoc; and (2) because Artoc was estopped from pursuing its claims. (App at 214-16). Under Texas law, [] the defense of estoppel includes the doctrines of quasi-estoppel, as well as equitable estoppel.[]

(Appellant's Brief at 6-7).  Apparently, the Debtor acknowledges that these defenses were included in the Debtor's 1990 motion for summary judgment on estoppel and, it seems by necessary inference, that no material issues of fact pertained to any of them when the Debtor filed the motion.

8

The Debtor references its request to supplement the factual record as a motion under Fed.R.Bankr.P. 7056 to supplement its response to Artoc's motion for summary judgment. However, Artoc's motion was simply a cross-motion for summary judgment on the issue of estoppel that was pending in the Debtor's own motion for summary judgment. The only thing added by Artoc's motion to the Debtor's then pending motion was discussion of facts articulated from the record before it by the Court of Appeals that Artoc believed controlled determination of the matter.

The Debtor has pointed to nothing in Rule 7056 that would tend to support, much less compel, the granting of the motion to supplement under these circumstances. Furthermore, supplementing the record with additional facts would have been futile anyway because, as discussed later, the defense of estoppel on any of the Debtor's theories is barred by uncontested facts that are core to all theories of estoppel.

The Debtor was not entitled to supplement the factual record long since closed by the Debtor's own pending motion, and the bankruptcy court's failure to grant the Debtor's motion to supplement its response to Artoc's motion for summary judgment by addition of facts relating to estoppel was not an abuse of discretion.[5]

---

[5] Apparently, the bankruptcy judge thought that he had granted the Debtor's request during the October 17, 1996 status conference, as he discussed in his December 18, 2000 order denying the Debtor's motion to alter or amend. However, review of the transcript of the hearing shows that the judge had intended to rule on the motion in a written order after Artoc responded to it, which Artoc did on October 28, 1996.

9

**Summary Judgment For Artoc Was Proper.**

The Debtor argues that the bankruptcy court erred in granting summary judgment for Artoc for the following reasons: 1) the bankruptcy court misapplied the law of the case doctrine; 2) the Debtor established a fact issue on each element of its estoppel defense; 3) the bankruptcy court disregarded the Debtor's quasi-estoppel and related defenses; and, 4) Artoc suffered no damages due to the setoffs taken by the Debtor.

We review the bankruptcy court's grant of summary judgment to Artoc *de novo*. Comsat Corp. v. St. Paul Fire and Marine Ins. Co., 246 F.3d 1101, 1105 (8ᵗʰ Cir. 2001). We conclude that the bankruptcy court properly applied the law of the case doctrine, and that summary judgment was otherwise properly considered and entered in favor of Artoc.

*1. Application Of Law Of The Case Doctrine.*

The law of the case doctrine applied by the Eighth Circuit, is:

When a case has been decided by this court on appeal and remanded to the District Court, every question which was before the court and disposed of by its decree is finally settled and determined. The District Court is bound by the decree and must carry it into execution according to the mandate. It cannot alter it, examine it except for purposes of execution, or give any further or other relief or review of it for apparent error with respect to any question decided on appeal.

Houghton v. McDonnell Douglas Corporation, 627 F.2d 858, 864 (8ᵗʰ Cir. 1980), citing Thornton v. Carter, 109 F.2d 316, 319-320 (8ᵗʰ Cir. 1940).

The Court of Appeals, in ruling against the Debtor on its motion for summary judgment on grounds of its alleged lack of notice of Artoc's assignment, held:

> At the very least, the notice [stamp on the invoices] should have raised a question in the mind of Apex, causing it to inquire about the security interest before setting off its account. *Robert Parker's Truck & Trailer Repair, Inc. v. Speer,* 722 S.W.2d 45, 48 (Tex.App.1986), held that notice under § 9.318 "embraces those things that a reasonably diligent inquiry and exercise of the means of information at hand *would have* disclosed." If Apex was unsure about the significance of the stamped notice, it had a duty to inquire before exercising any right it might otherwise have had to set off. At least where millions of dollars are at stake, as was the case here, a company acts unreasonably if it sets off a debt to it from another transaction, after being given notice of another's security interest in the amount due.

Artoc Bank & Trust Limited v. Apex Oil Company, at 1370. On remand the bankruptcy court noted that the Court of Appeals held that the Debtor failed to make a reasonable inquiry of Artoc's interest in the invoices offset, and the bankruptcy court ruled that the Debtor was negligent as a matter of law under the law of the case doctrine. The bankruptcy court concluded that the negligence barred the defense of estoppel under Texas law.

The Debtor argues that the discussion by the Court of Appeals in Artoc Bank & Trust Limited v. Apex Oil Company, quoted above, was *dicta* and not covered by the law of the case doctrine. However, the discussion directly supported the Court's ruling against the Debtor's claim that it lacked notice of the assignment. The discussion was part of the Court's ruling, not dicta.

11

The Debtor also argues that the finding cannot control the question of the Debtor's negligence as it relates to the estoppel defense because the Court of Appeals specifically expressed no view as to the merits of the estoppel theory, leaving it for development on remand to the bankruptcy court.  The Court held:

### III.

Finally, Apex argues that even if Artoc gave sufficient notice of the assignment, it is estopped to recover on the invoices since it knew Apex was engaging in setoffs with Uni and took no action to stop this practice. Neither the Bankruptcy Court nor the District Court reached this issue. They did not determine what the law requires to establish the defense of estoppel, nor did they find the facts to refute or support it.   Therefore, the issue is not properly before us.   We leave it for development on remand to the Bankruptcy Court.

### IV.

We reverse and remand to the District Court.   That Court is instructed to vacate its judgment and remand the cause to the Bankruptcy Court with instructions to enter judgment for Artoc, unless it determines that Artoc is estopped to recover on the debt.   As to the merits of the estoppel theory, we express no view.

Artoc Bank & Trust Limited v. Apex Oil Company, at 1370.  However, simply because the Court of Appeals left the estoppel issues to be developed in the bankruptcy court on remand and expressed no view on the theory, does not mean that issues decided in the appeal that might also pertain to estoppel issues left on remand are not subject to the law of the case doctrine.  Such issues decided are subject to the doctrine and become law of the case in the remanded proceeding.  Bethea v. Levi

12

Strauss & Co., 916 F.2d 453, 456-57 (8th Cir. 1990). The bankruptcy court correctly applied the law of the case doctrine.[6]

*2. Debtor's Failure To Establish Fact Issue On Any Element Of Its Estoppel Defense.*

The Debtor argues that it established a fact issue on each element of its estoppel defense. However, there exists no material fact issue regarding either the Debtor's motion for summary judgment or Artoc's motion on the issue. All of the necessary uncontested material facts are in the record to support summary judgment in favor of Artoc on estoppel.

Applicable Law Of Estoppel In General.

Texas law of estoppel applies. Under Texas law, the party asserting an affirmative defense of equitable estoppel must establish five elements:

---

[6] Even if the finding of negligence of the Debtor was not controlled by the law of the case, it is clear that the bankruptcy court made its own independent finding of the Debtor's negligence supported by the record before the court. In its September 1, 1999 Memorandum supporting its order for judgment, the bankruptcy court explained:

> ...Further, the Debtor has submitted interrogatory answers in this case stating that the Debtor never communicated with any "persons known to have been acting on behalf of Artoc."...
> ....
> The duty of inquiry element of the estoppel defense is only satisfied when the inquiry is made directly to the party to be estopped....

(Appellant's App. at 22)

13

(1) that the adverse party made a false representation to the asserting party or concealed a material fact from the asserting party;

(2) that the adverse party engaged in the misrepresentation or concealment knowingly and intentionally;

(3) that the asserting party was without knowledge or the means to determine the nature of the true facts. This element requires the asserting party to demonstrate that it fulfilled its duty of inquiry, and that it acted reasonably in its own conduct which is the subject of the dispute in which the defense is asserted;

(4) that the adverse party intentionally induced the asserting party to engage in the disputed conduct through misrepresentation or concealment; and

(5) that the asserting party engaged in the conduct because it relied on the adverse party's misrepresentations or concealment to the Debtor's prejudice.

Traylor v. Gray, 547 S.W.2d 644, 652 (Tex. Civ. App. 1977); Harris v. Varo, Inc., 814 S.W.2d 520, 522 (Tex. Civ. App. 1991); Norris of Houston. Inc. v. Gafas, 562 S.W2d 894 (Tex. Civ. App. 1978); Fretz Construction Co. v. Southern Nat'l Bank of Houston, 600 S.W.2d 878, 881 (Tex. Ct. App. 1980). Failure to meet the duty of inquiry in a secured financing transaction is negligence, which bars an estoppel defense as a matter of law. Continental Credit Corp. v. Norman, 303 S.W.2d 449 (Tex. Civ. App. 1957).

No Issues Of Material Fact.

The Debtor was the first to file a motion for summary judgment on the estoppel issue. In doing so, the Debtor itself represented that there existed no material question of fact regarding any of the five elements listed above that must be shown to successfully assert the defense. Artoc's motion on estoppel added nothing to the

14

scope of the proceeding created by the Debtor's own motion other than the argument of facts and conclusions articulated by the Court of Appeals from the summary judgment record before it in its 1992 decision, which Artoc argued controlled determination of the matter.

The Debtor claims that it established the following fact issues:

*i.)*    Artoc concealed a material fact, i.e., that it objected to the setoffs;
*ii.)*   Artoc had actual or constructive knowledge of the facts;
*iii.)* the Debtor had no knowledge of an objection by Artoc;
*iv.)* Artoc intended that its silence would be relied upon; and,
*v.)*   the Debtor acted in reliance on Artoc's silence to its detriment.

We disagree.

There is no evidence in the record that Artoc was aware of the Debtor's intentions or actions in setting off the accounts before the setoffs occurred.[7] We agree with the bankruptcy court that the only evidence in the record on the issue is that Artoc was not aware of the setoffs until after Uni filed bankruptcy, which was after the setoffs occurred. Artoc could not object, or conceal an objection, to an action about to be taken by the Debtor of which Artoc was not aware.

---

[7] The Debtor argues that Artoc had constructive knowledge because it knew that other Uni customers were setting off against Uni invoices as early as March 1980. The argument is not supported by the factual record in the proceeding. But, even if it was supported, knowledge of third party setoffs is not evidence of knowledge of the Debtor's conduct.

*3. Bankruptcy Court's Consideration Of Quasi-Estoppel And Related Defenses.*

The Debtor argues:

The bankruptcy court's summary rejection of the quasi-estoppel concepts of ratification, acquiescence, acceptance of benefits, unconscionability and contract was wrong as a matter of law. Furthermore, it was clearly an abuse of discretion for the bankruptcy court to deny Apex's motion for leave to provide additional supporting evidence on these various estoppel defenses and then summarily dismiss the existence of such defenses based upon an alleged absence of evidence in the record.

(Appellant's Brief at 23). However, each of these quasi-estoppel defenses, except that based on contract, depends on timely knowledge of material facts by the party against whom the defense is asserted.[8]  See, e.g., Teleprompter of Erie. Inc. v. City of Erie, 567 F. Supp. 1277, 1282 (W.D. Pa. 1983) ("there can be no acquiescence where there is no knowledge"); Frazier v. Wynn, 472 S.W.2d 750, 753 (Tex. 1971), appeal after remand, 492 S.W.2d 54 (1973, error referred n.r.e.) ("there can be no estoppel from acceptance of the benefits by a person who did not have knowledge of all material facts") . We already determined that the summary judgment record amply supports the bankruptcy court's conclusion that Artoc was unaware of the Debtor's setoffs until after Uni filed bankruptcy, which was after the setoffs occurred. Therefore, it follows that Artoc did not have timely knowledge of the setoffs that otherwise might have enabled a successful defense of knowledge-based estoppel. The bankruptcy

---

[8]  Estoppel by contract is based on contracts between the party raising the defense and the party against whom estoppel is sought to be applied. Echols v. Bloom, 485 S.W.2d 798, 801 (Tex. App. 1972). The Debtor had no contract with Artoc.

court's decision in this regard was not "wrong as a matter of law." It was the correct application of law to the uncontested core facts of the issue.

The Debtor argues that the bankruptcy court's failure to allow the Debtor leave to supplement the record with additional evidence on quasi-estoppel was an abuse of discretion. We again point out, however, that the Debtor alleged in its original motion for summary judgment, filed on February 27, 1990, that "Artoc had actual notice that Apex and other account debtors of Uni Refining were paying invoices directly to Uni and were engaging in the industry practice of 'net-outs', i.e. the set-off of mutual obligations." (Appellant's App. at 215). By the Debtor's own motion, the Debtor affirmed that the necessary facts on the issue of Artoc's knowledge of the setoffs were already in the record as long ago as February 1990. It was not an abuse of discretion by the bankruptcy court to deny the Debtor's request to supplement the factual record six and nine years later before deciding the issue that the Debtor itself had earlier represented was ripe for summary judgment.

*4. Artoc's Damages.*

The Debtor argues that the bankruptcy court erred in granting summary judgment on damages for Artoc because a fact issue exists as to whether Artoc suffered any damages. However, the directions of the Court of Appeals on remand were clear and unambiguous in limiting the bankruptcy court on remand to consider damages only in the context of prejudgment interest and attorney's fees, which is what the bankruptcy court did. The decision as originally filed on September 23, 1992, directed:

> We reverse and remand to the District Court. That Court is instructed
> to vacate its judgment and remand the cause to the Bankruptcy Court
> with instructions to enter judgment for Artoc, unless it determines that

17

Artoc is estopped to recover on the debt. As to the merits of the estoppel theory, we express no view.

Artoc Bank & Trust Limited v. Apex Oil Company, at 1370. On October 7, 1992, the Debtor petitioned the Court of Appeals for rehearing, arguing in its petition:

In its opinion, the Court has ruled that Apex could not properly offset the invoices because prior to the offset it had notice of the assignment of the accounts to Artoc. The Court, accordingly, has reversed the judgments of the bankruptcy and district courts granting summary judgment on this basis. However, should the Court disagree with Appellee that rehearing should be granted on the offset issue, the Court should reverse and remand "for further proceedings" rather than remanding with instructions to enter judgment, because additional issues must be resolved before entry of judgment for Artoc on its claim would be appropriate. See Landry v. G.B.A., 762 F.2d 462, 464 (5th Cir. 1985) (denial of summary judgment to one party does not constitute grant of judgment to the other party).

In its opinion, the Court recognizes that Appellee's estoppel defense must be resolved prior to entry of judgment for Artoc. However, Appellee has also raised other defenses which must be resolved by the bankruptcy court prior to entering judgment for Artoc, such as waiver, custom and usage of trade, and partial satisfaction of the accounts by direct payments to Uni. In addition, pursuant to the Bankruptcy Code and rules, once Appellee objected to and rebutted Artoc's claim, the burden was on Artoc to prove its claim by a preponderance of the evidence. In re West Tech. Ltd., 882 F.2d 323, 325 (8th Cir. 1989); In re Allegheny International, Inc., 954 F.2d 167, 174 (3d Cir. 1992); In re Fidelity Holding Co., 837 F.2d 696, 698 (5th Cir. 1988). Artoc has failed

18

to do so on the record before the Court. Indeed, no evidentiary hearing has been conducted at which Artoc could meet its burden. The requirement that Artoc prove its claim is especially important in this case because there is a substantial dispute over the amount of Artoc's claim resulting from payments Apex made to Uni on the invoices in question and certain agreed credits on the invoices for matters such as product shortages.

The following factual issues must be determined in a trial on the objection to the proof of claim:
1. the amount of the invoices as to which there were set-offs;
2. whether Apex ever received one of the invoices on which Artoc seeks recovery;
3. the amount of the invoices that has been paid by Apex;
4. whether any other valid claims, defenses or set-offs of Apex against Uni or Artoc exist;
5. the date upon which such other claims, defenses or set-offs accrued;
6. whether the set-offs occurred as part of the contract between the account debtor and the assignor;
7. whether Artoc waived its rights; and
8. the amount, if any, that Apex owes Artoc.
See In re Kolstad, 928 F.2d 171, 174 (5th Cir. 1991) (validity of contested claim should be resolved by litigation in adversary proceeding).

By remanding this case to the bankruptcy court with instructions to enter judgment for Artoc (unless Artoc is estopped from recovering), the Court is, in essence, granting summary judgment, *sua sponte*, for Artoc on these additional issues, which this Court has repeatedly held to be inappropriate. E.g., Moore v. Warwick Public School District No. 29, 794 F.2d 322, 325 (8th Cir. 1986); Williams v. City of St. Louis, 783

19

F.2d 114, 116 (8th Cir. 1986). Such a judgment is particularly improper in a case such as this where the court is granting summary judgment for a claimant on a claim which he has yet to prove. In order for a claimant to be entitled to summary judgment, the claimant must establish each essential element of his claim such that "no reasonable trier of fact could find other than for the [claimant]."

(Appellant's App. at 551-552). The Court of Appeals was not persuaded.

In denying the petition for rehearing, the Court of Appeals ordered on November 19, 1992, that "The Court on its own motion modifies the directions contained in the opinion previously filed by adding the following sentence at the end of the opinion: 'If judgment is entered against Apex, the Bankruptcy Court should first consider the issues of prejudgment interest and attorneys' fees. These issues are not concluded by this opinion, and we express no view on their merits.'" (Appellant's App. at 537-538).

As we observed earlier, upon remand the trial court is restricted to the mandate of the remand, and is not free to "alter it, examine it except for purposes of execution, or give any further or other relief or review of it for apparent error with respect to any question decided on appeal." Houghton v. McDonnell Douglas Corp., 627 F.2d 858, 864 (8th Cir. 1980), citing Thornton v. Carter, 109 F.2d 316, 319-320 (8th Cir. 1940). We agree with the bankruptcy court that the mandate of the Court of Appeals on remand limited the trial court's consideration of damages to interest and attorney's fees to be awarded in addition to the amounts of the setoffs. The bankruptcy court properly limited consideration of damages to that context.

**Twenty-Eight Percent Credit.**

On November 9, 1999, the Debtor filed its motion in the bankruptcy court for a 28% credit against Artoc's claim as finally allowed by the court. The motion was based on a provision in the confirmed Chapter 11 plan of Uni, entered in that case on August 15, 1983. The Debtor alleged that the following provision in Paragraph 5.2 of the plan entitles the Debtor to the credit as an offset against Artoc's claim in Apex's bankruptcy.

> 5.2 Class VIII - Creditors against whom money damage judgments in favor of Artoc Bank & Trust, Ltd. are awarded the District court Action shall receive twenty-eight percent of their allowed claim as and when their claim is filed or deemed filed, allowed and ordered paid by the Court. This payment shall not be paid in cash to Class VIII Creditors, but shall instead be received by those Class VIII Creditors whose claims are allowed and ordered paid by the Court, in the form of a twenty-eight percent (28%) credit against any judgment amount they are ever ordered to pay to Artoc Bank and Trust, Ltd. in the District court Action.

(Appellant's App. at 276). The bankruptcy court denied the motion, ruling that the request was barred by the law of the case as being beyond scope of the remand; that the relief requested was otherwise untimely raised as an affirmative defense; and, that the motion lacked substantive merit. We agree with the bankruptcy court that the relief sought is barred by the law of the case, and was otherwise untimely sought. We express no view on substantive merits of the Debtor's motion, as questions concerning distributions under Uni's confirmed plan are not properly before us.

Beyond The Scope Of Remand.

The issue here is one of law only, and our standard of review is *de novo*. <u>Whitmore v. Kenna</u>, 213 F.3d 431, 432 (8th Cir. 2000).

In its appeal, the Debtor for the first time labels the request for credit as an estoppel defense, and argues that its pursuit is properly within the Court of Appeals mandate on remand of the proceeding back in 1992. However, the request, if it had been properly and timely asserted, would have been based on the defense of *res judicata*. <u>See</u> <u>Land Services, Inc. v. Gaudet</u>, 414 U.S. 573, 592 (1974). The Debtor and Artoc were creditors in the Uni bankruptcy case with competing interests. The order of confirmation was a final order in the case. Application of the order in a later case or proceeding would be as *res judicata*. <u>See</u> <u>Arnica Mut. Ins. Co. v. Moak</u>, 55 F.3d 1093, 1097 (5th Cir. 1995). For the reasons we discussed earlier pertaining to the law of the case doctrine, we agree with the bankruptcy court that this newly raised defense asserted by the Debtor in its November 9, 1999 motion was beyond the scope of the remand.

Otherwise Untimely Raised As An Affirmative Defense.

Our review of the bankruptcy court's denial of the Debtor's motion for application of the 28% credit, to the extent that the denial was based on general untimeliness of the Debtor in asserting the defense, is under the abuse of discretion standard. <u>Comsat Corp. v. St. Paul Fire and Marine Ins. Co.</u>, 246 F.3d 1101, 1105, (8th Cir. 2001).

We agree with the bankruptcy court that the defense was untimely raised even if it was not beyond the scope of the remand. Res judicata and collateral estoppel are affirmative defenses that must be affirmatively pled, or they are deemed waived. See <u>Sartin v. Comm'r of Public Safety</u>, 535 F.2d 430, 433 (8th Cir. 1976). Fed. R. Bankr.

22

P. 7008(c) requires that any matter "constituting an avoidance or affirmative defense" must be pled in a responsive pleading. The Debtor did not plead the alleged credit against any judgment as an affirmative defense in any responsive pleading, and never raised it in any pleading until after the order for judgment allowing the principal amount of Artoc's claim had been entered by the bankruptcy court.

The attempt to raise the defense for the first time three months after the bankruptcy court entered its order for summary judgment in favor of Artoc, seven years after the Court of Appeals remanded the claim objection proceeding, and long after its own objection to Artoc's claim was filed, was untimely. The bankruptcy court's denial of the motion under these circumstances was not an abuse of discretion.

**Attorneys Fees.**

The bankruptcy court denied Artoc's claim for attorneys' fees to the extent the request was for postpetition fees. As to Artoc's claim for prepetition, prejudgment attorneys' fees, however, the court concluded that pursuant to the controlling Texas law, which state law the parties agreed governed the issue, Artoc is entitled to fees in addition to the principal amount of the claim because the claim was found to be both for a sworn account (as assignee of a creditor, Uni, in a sale and purchase of personal property with the debtor, Apex) and for an oral or written contract (as assignee of the sale contracts between Uni and Apex), and because the prejudgment presentment requirement was satisfied when Artoc made its demand of Apex in 1981. *See* Tex. Civ. Prac. & Rem. § 38.001.

The court allowed Artoc's principal claim in the amount of $1.7 million, plus interest. In a subsequent, separate order and opinion determining the appropriate amount of prepetition, prejudgment attorneys' fees due Artoc, the court allowed fees in the amount of $1,761.850.00 as part of Artoc's allowed general unsecured claim. Of the total amount of fees awarded, $316,850.00 represents hourly fees for services

performed by the law firm of Breed, Abbott, Morgan from 1981 to 1986, and $1,445,000.00 represents a contingent fee for services performed by Fehrenbacher, Sale & Quinn, based on fifty percent of Artoc's allowed principal and interest claim.

Apex raised numerous objections before the bankruptcy court, including: 1) Artoc failed to segregate fees expended in the prosecution of defendants other than Apex; 2) Artoc's documents in support of its request for fees were inadequate for want of sufficient descriptions of services and time spent; 3) a contingent fee agreement was not permissible; 4) the contingent fees requested included postpetition amounts; and 5) the contingent fees were not reasonable by comparison to the hourly fees requested and in relation to the amount of the allowed claim.

In its appeal of the bankruptcy court's allowance of fees, Apex raises these and other issues, essentially contending that the court both erred as a matter of law in awarding the fees and abused its discretion in determining the reasonableness of the fees. With respect to the reasonableness, Apex argues that the matter was in need of an evidentiary hearing and not properly summarily determined. Apex challenges several of the court's factual findings, including: 1) work performed in connection with claims against Apex was common to claims against other account debtors such that the work would have been performed even if Apex had been the sole account debtor, that the claims of different defendants were inextricably intertwined, and that Artoc's fees were all for work performed on or related to the claim against Apex; 2) all fees requested were in fact prepetition; 3) there was no duplication of legal services; 4) the documents provided to support the request for fees were sufficient; and 5) the amount of the fee award was reasonable and necessary. Apex also contests the court's legal conclusions, arguing that the court erred in its determination of the propriety of the contingent fee and the purported lodestar adjustment of the contingency fee.

Standard of Review

A decision regarding attorney fees is reviewable for an abuse of discretion. <u>See</u> <u>Walton v. LaBarge (In re Clark)</u>, 223 F.3d 859, 862 (8th Cir. 2000). "The bankruptcy court has the broad power and discretion to award or deny attorney fees, and, indeed, a duty to examine them for reasonableness." <u>Id</u>. at 863 (citations omitted). "Whether the compensation sought is reasonable, given the time, nature, extent of the services and the value of the services is always a question of fact for the court." <u>Id</u>., citing <u>Chamberlain v. Kula (In re Kula)</u>, 213 B.R. 729, 735 (8th Cir. BAP 1997); *see also* <u>Stewart Title Guar. Co. v. Sterling</u>, 822 S.W.2d 1, 12 (Tex. 1991); <u>Gorman v. Countrywood Property Owners Assoc</u>., 1 S.W.3d 915, 918 (Tex. App. 1999) (citations omitted).

Because the bankruptcy court is in the best position to determine the reasonableness of attorney's fees, we will not disturb a bankruptcy court's award of fees unless there has been an abuse of discretion. <u>See</u> <u>Browning v. President Riverboat Casino-Missouri, Inc</u>., 139 F.3d 631, 637-638 (8th Cir. 1998) (rejecting an appeal of a district court's award of attorneys' fees based on arguments that the award was excessive and unreasonable due to lack of complexity, duplicative fees, and undocumented hours).

The Bankruptcy Court's Factual Findings

"Although courts should consider several factors when awarding attorney's fees, a short hand version of these considerations is that the trial court may award those fees that are 'reasonable and necessary' for the prosecution of the suit." <u>See</u> <u>Sterling</u>, 822 S.W.2d at 10. The bankruptcy court's opinion reflects careful consideration of the many years of litigation including the nature and complexity of the dispute as well as the records kept by the lawyers providing Artoc's representation. There is no compelling evidence to suggest that the court did not carefully and

thoroughly evaluate the prepetition services provided by Breed Abbott on an hourly basis between 1981 and 1986 from the initial investigation and demand for payment on the Apex setoffs and the prepetition contingent representation performed by the Fehrenbacher firm thereafter. The record supports the court's conclusion that both firms provided extensive legal services involving complex legal issues and was entirely necessary to the recovery on Artoc's claim against Apex.

The court specifically found that time records were maintained contemporaneously with the provision of services and that periodic summary statements were also generated by the firms, and that the documentation of the legal work performed was "as complete as reasonably possible."

"When a plaintiff seeks to recover attorney's fees in a case where there are multiple defendants, and one or more defendants settle, the plaintiff must segregate the fees owed by the remaining defendants from those owed by the settling defendants, so that the remaining defendant is not charged fees for which it is not responsible." See Sterling, 822 S.W.2d at 10-11; *see also* Aetna Casualty and Surety v. Wild, 944 S.W.2d 37, 40 (Tex. App. 1997). Indeed, a failure to segregate fees may be fatal to recovery of attorney fees. See Sterling, 822 S.W.2d at 11. "However, segregation of attorney's fees is not required where the services rendered relate to (1) multiple claims arising out of the same facts or transaction and (2) the prosecution or defense entails proof or denial of essentially the same facts, so as to render the attorney's fees inseparable." See Wild, 944 S.W.2d at 41, citing Sterling, 822 S.W.2d at 11-12; *see also* Gorman, 1 S.W.3d at 918.

The bankruptcy court expressly found that the investigative work performed against all the defendants was so related and common that it would have been required even if Apex had been the sole defendant and that the legal services could not be apportioned among defendants or to any single defendant. Indeed, the court acknowledged that some relatively minor facts differed from claim to claim, but

26

unequivocally concluded that "the legal issues presented and the defenses raised by the defendants were substantially similar." All of the court's factual findings regarding the nature and necessity and reasonableness of the legal services provided by both firms are supported by numerous affidavits and cannot be said to be so contrary as to amount to a clear error in judgment. Its findings that the claims of different defendants were inextricably intertwined and that there was no duplication of services are adequately manifest from the voluminous record and need not be disturbed by the second guess of a reviewing court.

The Fehrenbacher Contingent Fee Award

The larger issue looming in the Apex appeal is the overall propriety of the award of a contingent fee. Apex does not expressly disagree that Artoc's case, upon no longer being able to retain the hourly representation of Breed Abbott, involved complexity, uncertainty of success, and a need for expedited trial preparation. Apex does not, however, concede that a contingent fee of fifty percent to take on the project was reasonable by virtue of those aggravating factors. Apex argues that the court erred not only in its factual determination of reasonableness of the contingent fee, but also in essence that the court erred as a matter of law by allowing any contingent fee.

The bankruptcy court found that under Texas law a contingency fee is permissible, even at fifty percent assuming the controlling reasonableness determination is applied, and is properly included as part of a claim for attorney fees. We agree. "The purpose of awarding attorney's fees and taxing it against the losing defendant is to make the successful plaintiff whole." See Goodyear Tire and Rubber Co. v. Portilla, 836 S.W.2d 664, 672 (Tex. App. 1992). In a contingent fee case, "[t]he calculation to be used is to take the damages awarded to the plaintiff, with interest, and then apply the reasonable percentage to it, in order to discover the amount due the successful attorneys." Id.

"Attorney contingency fee contracts serve two main purposes."  See Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997).  "[T]hey allow plaintiffs who cannot afford to pay a lawyer up-front to pay the lawyer out of any recovery ... [and they] compensate the attorney for the risk that the attorney will receive no fee whatsoever if the case is lost." Id. (citation omitted).  "The lawyer in effect lends the value of his services, which is secured by a share in the client's potential recovery." Id., citing Posner, Economic Analysis of Law § 21.9 (4th ed. 1992).

"[A] contingent fee award based solely on evidence of a percentage fee agreement between a lawyer and a client may be determined without regard to many of the factors that should be considered when determining reasonableness."  See Firefighters' and Police Officers' Civil Serv.  Comm'n.  of the City of Houston v. Herrera, 981 S.W.2d 728, 735-736 (Tex.  App.  1998), citing Arthur Andersen & Co. v.  Perry Equipment Corp., 945 S.W.2d 812, 818 (Tex.  1997); *see also* Robertson County v.  Wymola, 17 S.W.3d 334, 345 (Tex.  App.  2000).  A contingent fee agreement is admissible as to the reasonableness of fees, but the "agreement alone cannot support an award of attorney's fees." Id.  The bankruptcy court did not rely merely on the contingent fee agreement between Artoc and Fehrenbacher in allowing the fee or in determining it a reasonable and necessary fee.

Reasonableness and Necessity of the Fees

The Texas Supreme Court in Arthur Andersen set forth a process for determining the reasonableness of attorney fees, including contingency fees. "Factors that a factfinder should consider when determining the reasonableness of a fee include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the

28

amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services ; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered." See Arthur Andersen, 945 S.W.2d at 818.

We uphold the bankruptcy court's factual determination of the reasonableness of both the hourly fees and the fifty percent contingency fee. The court cited Arthur Andersen and thereunder plainly evaluated Artoc's case against Apex and Artoc's fee agreements with the Breed Abbott and Fehrenbacher firms with patent regard for the requisite factors. The Texas Supreme Court made clear in Arthur Andersen that the analysis is a case-by-case project in which the factfinder "must decide the question of [the reasonableness and necessity of] attorney's fees specifically in light of the work performed in the very case for which the fee is sought." Id. at 819. The record indicates that the court examined with care and sense a sufficient presentation of evidence upon which it based its conclusion that the contingent fee was reasonable and necessary.

Proportionality

Apex also argues that the fee award is improper because it is out of balance with the amount of the allowed underlying claim. While the extent of apparent proportionality of a fee award to the substantive amount in controversy is a valid consideration in the reasonableness determination, it is not alone a dispositive factor, even in a case of sizeable disparity as, for example, a fee award two and one half times the amount of the underlying claim. See Gorman, 1 S.W.2d at 919. Again, it is apparent that the bankruptcy court took into account the required and relevant considerations under Arthur Andersen in finding the fee award appropriate overall. Its

29

proportional largesse alone is not enough to overcome the other factors consistently behind the court's conclusion.

Contingency Enhancement of the Lodestar

Finally, Apex argues that the bankruptcy court's allowance of the Fehrenbacher fee constitutes error because it effectively amounts to enhancing a lodestar for a contingency, and cites the Supreme Court's opinion in <u>City of Burlington v. Dague</u>, 505 U.S. 557, 565 (1992), for the proposition that such a procedure is impermissible.

Apex is correct that <u>Dague</u> holds that enhancement of a lodestar calculation for contingency is not permitted, at least under federal fee-shifting statutes. However, the bankruptcy court did not enhance a lodestar calculation in awarding the contingent fees of the Fehrenbacher firm. Instead, the court analyzed the reasonableness and necessity of an award of fees pursuant to the contingency agreement under the applicable state law and, having plausibly determined it sound, endorsed the award at the contract rate.

"A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner or without reference to any guiding rules or principles. <u>See</u> <u>Wymola</u>, 17 S.W.3d at 344, citing <u>Downer v. Aquamarine Operators, Inc</u>., 701 S.W.2d 238, 241-242 (Tex. 1985). The bankruptcy court exercised care in considering the lengthy and complex record on the issue of fees in this case. The factual findings are supported and the law relied upon is valid. The bankruptcy court made no error of law or judgment and did not abuse its discretion. The award of attorneys' fees is affirmed.

## III
## CONCLUSION

Having found no abuse of discretion and no clear error of judgment or of law made by the bankruptcy court in any of the four orders from which the Debtor appeals, the decisions and judgment therewith are affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT