**Joseph RUPPERT, as trustee of and on behalf of Fairmount Park, Inc. Retirement Savings Plan, and on behalf of all others similarly situated, Plaintiff,**

v.

**PRINCIPAL LIFE INSURANCE CO., Defendant.**

No. 4:07–cv–00344–JAJ–TJS.

United States District Court, S.D. Iowa, Central Division.

March 31, 2010.

Brent B. Green, Duncan Green Brown & Langeness PC, Des Moines, IA, John A. Libra, Stephen M. Tillery, Korein Tillery LLC, Robert L. King, Korein Tillery, St. Louis, MO, Klint L. Bruno, Chicago, IL, for Plaintiff.

Eric S. Mattson, Joel S. Feldman, Mark B. Blocker, Sidley Austin LLP, Chicago, IL, Brian L. Campbell, Whitfield & Eddy PLC, Des Moines, IA, for Defendant.

### ORDER

JOHN A. JARVEY, District Judge.

This matter comes before the Court pursuant to Plaintiff Joseph Ruppert's ("Ruppert") December 21, 2009 Motion to Set Aside/Reconsider [Dkt. No. 187] the Court's November 5, 2010 order granting judgment on the pleadings on Counts I

and II to Defendant Principal Life Insurance Co. ("Principal"). [Dkt. No. 183; *Ruppert v. Principal Life Ins. Co.*, 2009 WL 5667708 (S.D.Iowa Nov. 5, 2009).] Principal responded to Ruppert's motion on January 28, 2010. [Dkt. No. 194.]

On November 25, 2009, the Eighth Circuit Court of Appeals decided *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585 (8th Cir.2009). The court in *Braden* made findings contradictory to this Court's November 5, 2010 order, as to whether revenue sharing is a breach of fiduciary duty and/or a prohibited transaction pursuant to ERISA. Pursuant to *Braden*, Ruppert asks the Court to vacate its entry of judgment for Principal as it relates to the affiliate or Foundation Options funds. The Court grants Ruppert's motion on Counts I and II and vacates its judgment only as to the Foundation Options mutual funds.

### I. STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not provide for motions to reconsider. "Motions to reconsider serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir.1988) (quotations omitted). A district court may treat a motion for reconsideration "as the 'functional equivalent of a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e)'". *COMSAT Corp. v. St. Paul Fire and Marine Ins. Co.*, 246 F.3d 1101, 1105 (8th Cir.2001) (quoting *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir.1999)). In addition to Rule 59(e), the Eighth Circuit has counseled courts to review motions to reconsider under Rule 60(b). *Sanders v. Clemco Indus.*, 862 F.2d 161, 168 (8th Cir.1988); *see also Schoffstall v. Henderson*, 223 F.3d 818, 827 (8th Cir.2000) (holding that Rule 59(e) applies to a motion to reconsider); *Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir.1999)

(analyzing whether Rule 59(e) or Rule 60(b) applies to a motion to reconsider).

■ A motion for reconsideration pursuant to Rule 60(b) is "not a vehicle for simple reargument on the merits." *Broadway*, 193 F.3d at 990. A movant must demonstrate "exceptional circumstances" to warrant reconsideration. *Arnold v. Wood*, 238 F.3d 992, 998 (8th Cir. 2001) (citing *Brooks v. Ferguson–Florissant Sch. Dist.*, 113 F.3d 903, 904 (8th Cir.1997)). A district court has broad discretion for considering requests for relief from orders, including motions to reconsider. *See Jones v. Swanson*, 512 F.3d 1045 (8th Cir.2008) (district court has wide discretion in ruling on an order to vacate judgment); *Chapa v. United States*, 497 F.3d 883 (8th Cir.2007) (abuse of discretion standard for post-trial motions); *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524 (8th Cir.2006) (abuse of discretion standard). An abuse of discretion occurs when a judgment "was based on clearly erroneous factual findings or erroneous legal conclusions." *Flannery v. Trans World Airlines, Inc.*, 160 F.3d 425, 426 (8th Cir.1998) (quoting *Mathenia v. Delo*, 99 F.3d 1476, 1480 (8th Cir.1996), *cert. denied*, 521 U.S. 1123, 117 S.Ct. 2518, 138 L.Ed.2d 1020 (1997)). Pursuant to Rule 60(c), a motion must be "made within a reasonable time" after entry of the order to which the motion pertains. FED. R.CIV.P. 60(c)(1).

■ In this case, the Court regards the motion to reconsider as a Rule 60(b) motion because Ruppert is requesting relief from an order. The Court has broad discretion to consider relief for "any other reason." FED.R.CIV.P. 60(b)(6). The motion was also made within a "reasonable time" after entry of the order and after the Eighth Circuit decision in *Braden*. FED.R.CIV.P. 60(c)(1). The Court finds the motion to reconsider[1] is proper because controlling legal authority in the area of revenue sharing was not available when the Court first ruled upon Principal's motion for judgment on the pleadings.

## II. BACKGROUND OF *BRADEN*

The Court finds it helpful to review the facts of *Braden* in determining whether it is proper to reconsider this Court's order. In *Braden*, Wal–Mart Stores, Inc. ("Wal–Mart") was the Plan Sponsor for an employee pension benefit plan ("Wal–Mart Plan") covered by ERISA, 29 U.S.C. § 1002(2)(A). The Wal–Mart Plan established individual profit sharing and 401(k) accounts for each participating employee. Merrill Lynch & Co., Inc. was the Wal–Mart Plan's trustee, holding its assets in trust and providing administrative services. The Wal–Mart Plan had over one million participants by the end of 2007 and close to $10 billion in managed assets. Participants had the option to choose from ten mutual funds, a common/collective trust, Wal–Mart common stock, and a stable value fund. The Wal–Mart Retirement Plans Committee ("RPC") picked the investment options presented to the participants and was the "entity responsible for the operation, investment policy, and administration of the plan." *Braden*, 588 F.3d at 589.

Braden alleged that Wal–Mart and the various individuals in the RPC (collectively, "Plan Fiduciaries") failed to adequately evaluate the investment options included in the Wal–Mart Plan. Braden's complaint

---

1. In *Braden*, the Eighth Circuit reviewed a Rule 12(b)(6) motion to dismiss. Here, Principal brought a Rule 12(c) motion for judgment on the pleadings. Pursuant to *St. Paul Ramsey County Medical Ctr. v. Pennington County*, the standard for a motion for judgment on the pleadings is reviewed under the same standard ... had the motion been brought under Rule 12(b)(6)." 857 F.2d 1185, 1188–89 (8th Cir.1988).

alleged that the process by which the Plan Fiduciaries selected investment options was tainted because "some or all of the investment options" charged excessive fees, perhaps upwards of $60 million in fees over six years (the period included in the complaint). *Id.* at 590. Braden alleged that the Wal–Mart Fiduciaries selected poor investments and that they failed to consider the impact that revenue sharing from other mutual funds to Merrill Lynch had on the Wal–Mart Plan's investment return. In support of his argument of a reduced return, Braden asserted that the Wal–Mart Plan had "substantial bargaining power" because of its large size and that it inappropriately invested in the markedly more expensive retail shares "generally offered to individual investors" instead of the cheaper institutional shares. *Id.* Furthermore, Braden alleged that the revenue sharing payments made by other mutual fund companies to Merrill Lynch were not reasonable compensation for services rendered, but "rather were kickbacks paid by the mutual fund companies in exchange for inclusion of their funds in the [Wal–Mart] Plan." *Id.* The Wal–Mart Fiduciaries did not disclose the practice of revenue sharing because the "Plan's trust agreement require[d] [the Wal–Mart Fiduciaries] to keep the amounts of the revenue sharing payments confidential." *Id.*

As it relates to the practice of revenue sharing, Braden alleged the following in his complaint: Count I, breach of fiduciary duty; Count III, breach of the duty of loyalty by failing to inform participants of Wal–Mart Plan fees and the amounts of "revenue sharing payments made to Merrill Lynch; and Count V, revenue sharing payments are prohibited transactions" pursuant to 29 U.S.C. § 1106(a)(1). *Id.* The Western District of Missouri District Court dismissed all the claims on the grounds that Braden failed to allege sufficient facts to support his claims. *Id.* at 590–91.

The Eighth Circuit reversed and remanded because it found that Braden had adequately stated claims for the following: violation of fiduciary duties of prudence and loyalty imposed by ERISA; breach of ERISA imposed fiduciary duties of loyalty and disclosure; and breach of ERISA imposed fiduciary duty barring direct or indirect furnishing of services between the plan and a party in interest. *Id.* at 598, 600, 602. It is with this background that the Court will examine the decision of the Eighth Circuit in light of Ruppert's motion to reconsider the breach of fiduciary duty and prohibited transaction claims.

### III. PLEADING STANDARDS IN A RULE 12(B)(6) MOTION

#### A. Generally

*Braden* interpreted Federal Rule of Civil Procedure 8 to mean that a complaint will survive a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden,* 588 F.3d at 594 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))). Under this plausibility standard, the plaintiff must "show at the pleading stage that success on the merits is more than a 'sheer possibility'", even if "a savvy judge" could find recovery very unlikely. *Id.* A court must only find that the complaint's factual content could "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In drawing inferences, the court has three duties. First, the court must accept the "plaintiff's factual allegations as true." *Id.* Next, the court must identify factual allegations that "require 'further enhancement' in order to state a claim." *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct.

1955). Finally, the court should construe the complaint as a whole instead of "pars[ing]" pieces "in isolation" to determine if each allegation is plausible. *Id.* (citing *Vila v. Inter–Am. Inv. Corp.*, 570 F.3d 274, 285 (D.C.Cir.2009)).

### B. As Applied to a Breach of Fiduciary Duty

The court then applied the Rule 12(b)(6) pleading standards to the breach of fiduciary duty claim. It found that district courts should "focus on the process by which [the fiduciary] makes its decisions rather than the results of those decisions." *Id.* at 595, 127 S.Ct. 1955. A court will err if it ignores reasonable inferences supported by the alleged facts or draws inferences in favor of the non-moving party. *Id.*

*Braden* found that a plaintiff is not required under Rule 8 to plead "specific facts" or to describe exactly how fiduciary duties were breached. *Id.* Indirect facts are sufficient. *Id.* In coming to its conclusion that Wal–Mart had breached its fiduciary duties to Braden, the court focused on the following factors: the Plan had a large pool of assets; the Plan only bought retail class shares instead of institutional class shares; seven of the ten funds charged 12b–1 fees; the Plan did not replace underperforming funds; and the Plan engaged in revenue sharing payments. *Id.* at 595–96. The Court continued,

> The district court correctly noted that none of these allegations directly addresses the process by which the Plan was managed. It is reasonable, however, to infer from what is alleged that the process was flawed. Taken as true, and considered as a whole, the complaint's allegations can be understood to assert that the Plan includes a relatively limited menu of funds which were selected by Wal–Mart executives despite the ready availability of better options.

*Id.* at 596. The court focused on how the decision-making process of fiduciaries could break down based upon Braden's alleged facts. *Id.* For support, the court cited to the different scenario presented in *Hecker v. Deere & Co.*, 556 F.3d 575, 578 (7th Cir.2009), because in Hecker, participants' access to over 2500 mutual funds "makes more plausible the claim that this [Wal–Mart] Plan was imprudently managed." *Id.* at 596 n. 6. The court signaled that Rule 8 and Rule 12(b)(6) applications will always be "context-specific"—or fact specific—and that Braden's allegations in this case merited further attention. *See id.* at 596 n. 7.

Furthermore, *Braden* stressed that a court should not put the burden on the plaintiff to rebut all possible alternative inferences that the defendant may assert. *Id.* Similarly, a lawful explanation for conduct will also not "render[ ] the plaintiff's theory implausible." *Id.* at 597. Specifically in context to ERISA litigation, the court emphasized that because of the inequality of information, the court should take "careful and holistic evaluation of an ERISA complaint's factual allegations before concluding that they do not support a plausible inference that the plaintiff is entitled to relief." *Id.* at 598.

### IV. BREACH OF FIDUCIARY DUTY

#### A. Eighth Circuit Findings in Braden

Ruppert alleges that the Court erred in finding there was no claim for breach of fiduciary duty based upon the revenue sharing practice. Ruppert further contends that the Court erred by following the district court decision in *Braden v. Wal–Mart Stores, Inc.*, 590 F.Supp.2d 1159 (W.D.Mo.2008), and other courts that had decided along similar lines. [Memo. in Support of Mtn. to Reconsider, Dkt. No. 187–1 at 9] (hereinafter Ruppert's Memo.) Based upon the Eighth Circuit's decision in *Braden*, 588 F.3d at 598–99, Ruppert

asserts that his allegations about Principal's failure to disclose details of revenue sharing payments is sufficient to state a claim for breach of fiduciary duty and it was thus improper for the Court to grant Principal judgment on the pleadings. [Ruppert's Memo. at 9.] Ruppert alleges that the Court improperly made inferences in favor of Principal in its motion for judgment on the pleadings. *Id.* at 10. Furthermore, using a side-by-side comparison of *Ruppert* and *Braden* of the breach of fiduciary duty claims, Ruppert asserts that his claims are "virtually identical" to *Braden's*. *Id.* at 13–15. Because the allegations are "indistinguishable" and *Braden* is controlling authority, Ruppert asks the Court to set aside its entry of judgment on the pleadings as it relates to the Foundation Options funds.[2] *Id.* at 15.

Principal claims that the allegations in *Braden* and this case are materially different and "the reasoning of *Braden* is too tight a fit." [Def.'s Response in Opposition, Dkt. No. 194 at 7] (hereinafter Principal's Response.) First, Principal asserts that it is "not a named fiduciary-accused of choosing expensive funds ... but instead is a service provider-akin to non-party Merrill Lynch in *Braden*." [Principal's Response at 2.] Next, Principal claims that the Eighth Circuit did not hold, as Ruppert argues, that revenue sharing is "inherently" unlawful "unless every penny of revenue is credited to the plan." *Id.* Principal claims that *Braden* had more to do with a totality of circumstances test to determine that a breach of fiduciary claim

was plausible pursuant to *Twombly*[3] and *Iqbal*.[4] *Id.* at 4.

Further, Principal asserts that the plaintiff never argued that a failure to disclose is a *per se* violation of the duty to disclose and cites to the Secretary of the Department of Labor's amicus brief in *Braden*. *Id.* at 5. Principal suggests that the fact that distinguishes *Braden* from the present case, is that the Wal–Mart Fiduciaries agreed to keep revenue sharing payments secret. Here, Ruppert claims that there was only a lack of sufficient information. *Id.* at 6. Finally, Principal urges the Court to deny the motion for reconsideration because the Eighth Circuit was clear in its opinion that the availability and number of funds was a factor the court considered. Accordingly, this case with its wide array of fund choices is more similar to the decision of the Seventh Circuit Court of Appeals in *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir.2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 1141, 175 L.Ed.2d 973 (2010), than *Braden*. [Principal's Response at 6.] The Eighth Circuit did not prescribe rules as to whether revenue sharing is allowed because it could not decide the disclosure claims as a matter of law based upon the scant record before the court. *Id.* at 4. Thus, Principal asserts that the allegations between *Braden* and Ruppert are distinguishable.

The Eighth Circuit held that the district court erred in dismissing the fiduciary duty claim. The district court "ignored" reasonable inferences from the alleged

---

2. The Court notes that there were two different types of mutual funds at issue in the complaint. "Access Funds" are registered with the Security Exchange Commission ("SEC"), and "Foundation Options," which are not SEC registered. The Access Funds are "non-affiliate funds" and are, essentially, investments made in SEC registered mutual funds. The Foundation Options are non-SEC registered "affiliate funds" and are managed

directly by Principal. Ruppert only asks the Court to set aside the entry of judgment on the pleadings for the Foundation Options, or affiliate funds.

3. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

4. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

facts and improperly drew inferences in the appellees' favor, "faulting Braden for failing to plead facts tending to contradict those inferences." *Braden,* 588 F.3d at 594. As a result, the Eighth Circuit re-examined Braden's allegations and construed them favorably in his favor as the non-moving party. *Id.*

A breach of fiduciary duty comports with a prudent person standard. The court found that in considering whether Wal–Mart breached its fiduciary duty to plan participants by failing to act prudently, it would "focus on the process by which [the fiduciary] makes its decisions rather than the results of those decisions." *Id.* (citing *Schaefer v. Ark. Med. Soc'y,* 853 F.2d 1487, 1492 (8th Cir.1988)). The Eighth Circuit then concluded that the general duty of loyalty required fiduciaries to "disclose any material information that could adversely affect participant's interests." *Id.* at 598 (quoting *Kalda v. Sioux Valley Physicians Partners, Inc.,* 481 F.3d 639, 644 (8th Cir.2007)). But the court also stressed that it was "not quick to infer specific duties of disclosure under § 1104 because of the extent of the [ERISA] statutory and regulatory scheme." *Id.* (citing *Jensen v. SIPCO, Inc.,* 38 F.3d 945, 952 (8th Cir.1994)). The court considered the following arguments Braden made about revenue sharing payments, such that Wal–Mart should have disclosed: (1) the amount of revenue sharing payments; (2) that Merrill Lynch retained the payments and did not credit the payments to the Wal–Mart Plan; and (3) that the payments were made in exchange for inclusion of certain funds in the Wal–Mart Plan. *Id.* at 599. Without specifying or clarifying which of Braden's arguments had merit— or assessing the relative strength or importance of his arguments—the court

found [5] that ERISA does require disclosure of "revenue sharing arrangements" because it is material information. *Id.*

In the court's analysis, it suggested that materiality of information depends on the effect the information would have on "a reasonable participant's decisions about how to allocate his or her investments among the options in the [Wal–Mart] Plan." *Id.* There needs to be a substantial likelihood that nondisclosure could contribute to an uninformed decision. *Id.* Materiality of information provided to investors is a "fact-intensive issue" and can "be decided as a matter of law only if no reasonable trier of fact could disagree." *Id.* at 599. The court found that Braden's allegations were sufficient such that a reasonable trier of fact could disagree on whether the information could "mislead a reasonable participant in the process of making investment decisions under the [Wal–Mart] Plan." *Id.* (citations omitted). Wal–Mart thus violated the duty of loyalty. *Id.* The court agreed with Braden's allegation that revenue sharing payments could "corrupt[ ] the fund selection process" because a service provider could select a fund for revenue sharing payment benefits rather than because it is a prudent investment. *Id.* at 599–600. In sum, the court found that "ERISA's duty of loyalty may require a fiduciary to disclose latent conflicts of interest which affect participants' ability to make informed decisions about their benefits." *Id.*

Materiality analyses are also essential for determining whether a fiduciary has a duty to disclose certain information and the court concluded that the district court had failed to conduct such an analysis. Importantly, the court did state,

---

**5.** "The district court dismissed these claims, concluding that ERISA does not require disclosure of revenue sharing arrangements and closure of revenue sharing arrangements and

that the other information Braden sought was not material. We disagree." *Braden,* 588 F.3d at 599.

*While we agree that there may be no per se duty to disclose such payments, that conclusion is not dispositive here.* As we have indicated, materiality is a fact and context sensitive inquiry. On this record, Braden's disclosure claims cannot be decided as a matter of law. For now, he has alleged sufficient facts to support an inference that nondisclosure of details about the fees charged by the Plan funds and the amount of the revenue sharing payments would 'mislead a reasonable [participant] in the process of making an adequately informed decision regarding' allocation of investments in the Plan. *Kalda,* 481 F.3d at 644.

*Id.* (first emphasis added) (second alteration in original).

### B. Applying Braden to Ruppert

The Court now reviews Ruppert's breach of fiduciary duty claim considering *Braden's* standards. In the November 5, 2010 Order, this Court examined whether Principal's failure to disclose revenue sharing payments was a material omission. In reaching the conclusion that fiduciaries do not have a duty to disclose such payments, this Court looked to the ERISA statutory language and accompanying rules, as well as decisions from other district courts and the Seventh Circuit's decision in *Hecker. See Ruppert,* 2009 WL 5667708.

This Court found that the majority of courts have concluded that disclosing the total fee is material because only the expense ratio is critical information to an investor's decision-making. *Id.* at *12–13. Additionally, other courts have concluded that ERISA's silence on the topic and the Department of Labor's signaling[6] about mandating disclosure in its new regulations, indicate that currently, revenue sharing payments does not constitute a material disclosure. *Id.* at *11–12. For courts that did require disclosure, they found that disclosure was required to prevent misrepresentation of the total fees charged. *Id.* at *13. This Court undertook a materiality analysis to determine whether revenue sharing payments would be a material decision to investors. *Id.* at *14. This comports with the Eighth Circuit's holding that circumstances of revenue sharing payments should be a fact-intensive inquiry. *Braden,* 588 F.3d at 599 ("Materiality is a fact intensive issue which can be decided as a matter of law only if

---

6. In a 2007 Advisory Council Report, the following comments were made regarding revenue sharing:

> The Working Group recognizes that in the DOL's view, revenue sharing does not involve any inherent ERISA violations. To the contrary, many of these arrangements may serve to reduce overall plan costs and provide plans with services and benefits not otherwise affordable to them.... After considerable consideration of this issue, it is the feeling of the Working Group that the DOL should issue guidance that clarifies that revenue sharing is not a Plan asset under ERISA unless and until it is credited to the Plan in accordance with the documents governing revenue sharing.... [The Working Group] also understands DOL's suggestion that the documents and instruments governing a plan therefore might specifically provide that revenue sharing

> could be used to reduce plan expenses generally or that such proceeds would be allocated among all participants on a pro rata basis....

Dep't of Labor, E.B.S.A., Report of the Working Group on Fiduciary Responsibility and Revenue Sharing Practices (2007), *available at* http://www.dol.gov/ebsa/publications/AC 11076.html.

Furthermore, the Government Accountability Office stated there is still confusion on reporting requirements about the revised Form 5500 Schedule C for reporting direct and indirect-such as revenue sharing-compensation. GAO, REPORT TO THE CHAIRMAN, COMMITTEE ON EDUCATION AND LABOR, HOUSE OF REPRESENTATIVES, PRIVATE PENSIONS: ADDITIONAL CHANGES COULD IMPROVE EMPLOYEE BENEFIT PLAN FINANCIAL REPORTING (Nov. 2009), *available at* http://www.gao.gov/new.items/d1054.pdf.

no reasonable trier of fact could disagree.") (citations omitted). For example, *Braden* involved Wal–Mart and there is far more likely to be misrepresentations or potential conflicts of interest involved when a consumer giant only uses retail share class mutual funds instead of institutional share class funds.[7] Even in the case law, there appears to be a pattern that courts hold revenue sharing payments are more likely to be a breach of fiduciary duty when there is some inherent misrepresentation or indication from company behavior that high-expense mutual funds were either selected carelessly or without regard for expense fees. *See generally Ruppert*, 2009 WL 5667708, at *12–13. According to *Braden*, the *process* of decision-making is a dominant consideration for whether investment choices are reasonable, including the selection of mutual funds that pay revenue sharing fees. The primary concern with the decision-making process appears to relate to fee reasonableness, with revenue sharing payments a sub-component of whether higher expense mutual funds were selected *because* they paid revenue sharing fees to certain plan administrators. *Braden*, 588 F.3d at 596.

Based upon case law and analogous securities law for 12b–1 payments, this Court found that disclosing only the overall expense ratio was important to the investment-making decision. *Ruppert*, 2009 WL 5667708, at *14. Furthermore, Ruppert had not alleged Principal misrepresented its revenue sharing payments. *Id.* Thus, this Court granted Principal's motion for judgment on the pleadings.

██ The Court looks to *Braden's* three-step instruction on how to construe a Rule 12(b)(6) claim in reference to a breach of fiduciary duty claim. *See generally Braden*, 588 F.3d at 594. First, the Court must accept as true all of Ruppert's allegations and apply all reasonable inferences to his claims, as he is the non-moving party. Pertinent to a breach of fiduciary duty claim, it must be accepted as true that Principal selects mutual funds that engage in revenue sharing, the "kickbacks" are not returned to the plan, and that "Principal does not disclose, or does not adequately disclose" this practice of revenue sharing. *Ruppert*, 2009 WL 5667708, at *2–4. The Court finds that Ruppert's claim is plausibly sufficient without any further factual enhancements. Finally, when read as a whole, the Court finds the claim supports an inference that the revenue sharing payments practice is a breach of fiduciary duty.

██ In considering Ruppert's claim for breach of fiduciary duty, the Court examines the complaint pursuant to Braden's emphasis on a materiality analysis. *Braden*, 588 F.3d at 599. Indirect facts of a breach of fiduciary duty are sufficient. *Id.* at 595. Here, the lack of adequate disclosure in conjunction with keeping the revenue sharing kickbacks, could lead a reasonably prudent investor under like circumstances to conclude that Principal did not act with the requisite care, skill, prudence, and diligence required. Braden's emphasis on determining whether the process of the decision-making was flawed is also very important. *Id.* at 596. Although Ruppert's allegations about the flaws in the process of the decision-making do not rise to the level asserted in *Braden*, at this stage in the proceedings, the Court can

---

7. From a materiality aspect, there would be reason to question why Wal–Mart selected retail class funds that made revenue sharing payments; these fees would already be substantially higher than institutional class fund shares. There is probably already an inher-

ent breach of fiduciary duty for Wal–Mart to include retail class shares with an expense ratio at .68% versus institutional class shares in the same fund with an expense ratio at .43%; a difference of .25%. *See Braden*, 588 F.3d at 596 n. 5.

reasonably infer that Principal's selection of funds for revenue sharing purposes might have influenced the decision-making of a reasonable investor. Unlike *Braden*, Ruppert has not alleged excessive or unreasonable fees; rather, that the payments amount to a "windfall" to Principal. It is fair to assert that Ruppert has a knowledge deficit as to the particular breaches of fiduciary duty, and the Eighth Circuit seems to instruct district courts to apply a liberal construction to these alleged breaches at the pleading stage. Whether in light of a context or fact specific record Ruppert could prevail, is not a matter appropriate at this time for review. *Braden*, 588 F.3d at 596 n. 7. Ruppert need not rebut all possible reasonable alternatives for the revenue sharing payments, *id.* at 597, because a general duty of loyalty may require disclosure of all conflicts of interest. *Id.* at 598.

To satisfy the Rule 8 pleading requirements, Ruppert must only allege the amount, the retention of the fees without credit to the plan, and that payments were made for inclusion in the fund. *Id.* at 600. This is material information in a revenue sharing claim and because it is a fact-intensive issue, the Court cannot conclude that no reasonable juror would not want disclosure on revenue sharing payments when making an investment decision.[8]

Although all fiduciaries, in whatever capacity they serve, must follow and comport with the same rules of conduct, the Court notes there is also some distinction here in the roles of the parties.[9] However, the Court need not determine, at this stage, whether the difference in roles would have an effect on the fiduciary duties. It is enough pursuant to *Braden* that a plausible inference as a breach of fiduciary duty claim exists. *See Braden*, 588 F.3d at 599.

Lastly, *Braden* did not hold outright that revenue sharing payments are a breach of fiduciary duty. The court has held that district courts must consider whether the revenue sharing payment would be a material decision for investors and this analysis would depend on several

---

**8.** The Secretary of Labor had a compelling argument as to materiality of information for revenue sharing in her *amicus* brief:

> Moreover, in general, the determination of whether specific information is material requires factual development and cannot ordinarily be resolved at the motion to dismiss stage. In the particular context of this case, a conclusion cannot fairly be made concerning whether information on the revenue sharing arrangements was immaterial to Plan participants without evidence as to the nature, amount, or justification for the fees involved, or whether consideration of the revenue sharing fees had, in fact, improperly influenced the fiduciaries' selection of overpriced fund options, as alleged by the plaintiff.

Brief for the Secretary of Labor as Amicus Curiae, *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585 (8th Cir.2009) (No. 08–3798), 2009 WL 964127, at *5.

**9.** In *Braden*, Wal–Mart was the Plan's sponsor and selected the mutual funds for inclusion. *Braden*, 588 F.3d at 589–90. The funds made revenue sharing payments that benefitted Merrill Lynch, its trustee. *Id.* In *Ruppert*, Principal was the service provider and Ruppert was the plan administrator who selected the mutual funds for inclusion. *Ruppert*, 2009 WL 5667708, at *2. In the mutual fund choices Principal presented to Ruppert, Principal included mutual funds that paid Principal revenue sharing payments. *Id.* Thus, there would be some difference here even in the roles Wal–Mart and Principal played, because Wal–Mart *selected* funds that already had high fees, with some of these fees including revenue sharing payments to Merrill Lynch. *See Braden*, 588 F.3d at 596–97. Principal, on the other hand, did receive revenue sharing payments from outside mutual companies, but Ruppert never alleged the fund expenses were not competitively priced and he was also able to choose the mutual funds for his plan based upon overall expense ratios. *See Ruppert*, 2009 WL 5667708, at *2–4.

factors: the expense ratios, the number of investment options, whether the fiduciary disclosed the revenue sharing payments, if the fiduciary made all the recommendations, whether it was a pre-packaged plan or investors could choose among options, etc. *Id.* at 598–99. Especially because the district court in *Braden* dismissed the claim without conducting a materiality analysis or construing the facts in favor of the plaintiff, there is not significant guidance that results from the Eighth Circuit's decision as to the overall lawfulness of revenue sharing payments. *Id.* at 599–600. Although there is no per se duty to disclose,[10] *id.*, Ruppert has alleged sufficient facts to infer that inadequate or non-disclosure of fees could mislead a reasonable investor.

The Court finds that further factual development of the breach of fiduciary duty will assist in conducting a materiality analysis. Because revenue sharing payments is a fact-intensive issue, the Court vacates its judgment on the pleadings in favor of Principal as to the Foundation Options funds.

## V. PROHIBITED TRANSACTION

### A. Eighth Circuit Findings in Braden

Ruppert next asserts that this Court should vacate its judgment as to the prohibited transaction count for the Foundation Options. Ruppert states that the Court should have "ended its analysis" when it determined that revenue sharing payments from the Foundation Options funds came directly from assets of the plan. [Ruppert's Memo. at 10.] He states that the Eighth Circuit in *Braden* was "equally emphatic" that district courts should not consider if fees paid were reasonable when determining if a fiduciary

engaged in a prohibited transaction. "The result in *Braden* with respect to the prohibited transaction claim did not turn on the fact that Wal–Mart had caused the Plan to engage in a transaction with an interested party as opposed to having instead dealt in plan asserts for Wal–Mart's own benefit." *Id.* at 5. Ruppert contends that the Court erred when it "continued to consider the issue of the reasonableness of Principal's compensation under ERISA § 408" for five reasons: *Braden* stated that district courts should not consider § 408 defenses; Principal did not plead § 408 as an affirmative defense for reasonable compensation; other circuits question whether reasonable compensation is a defense for a claim of self-dealing; Principal did not provide the Court with any information about the reasonableness of fees; and lastly, the Service and Expense Agreement applied only to Access Funds and not Foundation Options Funds. *Id.* at 11–12. Based upon the foregoing, Ruppert requests the Court to vacate its judgment as to the prohibited transaction claim for the Foundation Options funds.

Principal opposes the Court's reconsideration of the prohibited transactions claim. Principal asserts that "[n]othing in *Braden* calls into question this Court's or the Seventh Circuit's rulings [in *Hecker* ]" regarding claims asserted pursuant to 29 U.S.C. §§ 1106(b)(1) and (3). [Principal's Response at 7.] In *Braden,* the plaintiff brought his claim under § 1106(a)(1)(C), as opposed to here, where the prohibited transaction claims were under §§ 1106(b)(1) and (3). Principal argues that the Eighth Circuit determined that transactions between pension plans and "parties in interest" were prohibited, but

---

10. Again, the Court notes that the Secretary of the Department of Labor repeats her assertion, as she did in *Hecker,* that disclosing revenue sharing payments among its affiliates was not material information. Brief for the Secretary of Labor as Amicus Curiae, *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585 (8th Cir.2009) (No. 08–3798), 2009 WL 964127, at *9.

did not specifically make a finding regarding plan assets. [Principal's Response at 7.] In contrast to *Braden*, Ruppert here alleges Principal made "potentially improper" use of plan assets. *Id.* Principal asserts that the Eighth Circuit did not reach the issue of pursuing a claim based upon plan assets. *Id.* Accordingly, Principal asks the Court to deny the motion for reconsideration.

Braden alleged that the appellees had engaged in prohibited transactions with the trustee, Merrill Lynch, pursuant to 29 U.S.C. § 1106(a)(1), because Merrill Lynch was a "party in interest." *Braden*, 588 F.3d at 600–01. Braden claimed that the revenue sharing payments were kickbacks for inclusion in the Wal–Mart Plan, rather than reasonable compensation for actual services performed. *Id.* He argued that the payments were prohibited by §§ 1106(a)(1)(C) and (D), and not exempted by § 1108(b)(2). *Braden*, 588 F.3d at 600.

The Eighth Circuit agreed with Braden that his claims were viable and found that the district court erred when it said Braden had not established a plausible inference that the payments were unreasonable. *See id.* The court held that Section 1108 does provide for exemptions for services paid if payments are reasonable, but that the district court improperly placed the burden on Braden to establish the payments were reasonable, rather than on the Wal–Mart Fiduciaries.[11] *Braden*, 588 F.3d at 601–02. Merrill Lynch, as a party in interest, had received a "direct or indirect ... furnishing of services ... between the plan and a party in interest", and this was sufficient to state a claim for a prohib-

ited transaction. *Id.* at 601. The court supported its conclusion by stating that the exemption for reasonable compensation is in a separate section of the statute, thus "the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits." *Id.* at 602. Trust law also influenced the court because in prohibited transactions that involve self-dealing, "settled law is that ... the burden of proof is always on the party to the self dealing to justify its fairness." *Id.* (quoting *Marshall v. Snyder*, 572 F.2d 894, 900 (2d Cir.1978)). Finally, the Wal–Mart Fiduciaries in *Braden* could not use the § 1108 exemption defense because Wal–Mart Fiduciaries and Merrill Lynch had "required the amounts of the payments to be kept secret"; thus, Braden had no opportunity or capability to access the information because it "remain[s] in the sole control of the parties who stand accused of the wrongdoing." *Id.* (citations omitted). The court found the district court's conclusion "perverse" to require Braden to plead facts that the appellees would not disclose.

Finally, this Court notes that the Eighth Circuit found that there was a prohibited transaction based upon 29 U.S.C. § 1106(a)(1)(C). This subsection states that a fiduciary is prohibited from "furnishing of goods, services, or facilities between the plan and a party in interest." *Id.* However, the Eighth Circuit declined[12] to reach the question of whether revenue sharing payments violated § 1106(a)(1)(D): if a transaction is a "transfer to, or use by or for the benefit of a party in interest, of any *assets of the plan*". § 1106(a)(1)(D)

---

11. "Braden does not bear the burden of pleading facts showing that the revenue sharing payments were unreasonable in proportion to the services rendered and the district court erred in dismissing his claim on this basis." *Braden*, 588 F.3d at 601.

12. "We decline to reach this question which has not been presented to the district court and therefore remand for it to determine in the first instance whether Braden has stated a prima facie claim under § 1106(a)(1)(D)." *Braden*, 588 F.3d at 603.

(emphasis added). Accordingly, *Braden* did not definitively establish whether a transfer of assets of the plan is a prohibited transaction.

### B. Applying Braden to Ruppert

The court's finding in *Braden* as to the prohibited transaction claim is not directly on point here because it scrutinized a different subsection of 29 U.S.C. § 1106. In *Braden*, the court analyzed 29 U.S.C. § 1106(a), to determine that the fiduciary had engaged in a prohibited transaction:

(a) Transactions between plan and party in interest

Except as provided in section 1108 of this title:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

. . .

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of a party in interest, of any *assets of the plan;* . . . .

§ 1106(a)(1)(C), (D) (emphasis added). The Eighth Circuit held that Braden's allegation was sufficient to state a claim under § 1106(a)(1)(C), but remanded his claim pursuant to § 1106(a)(1)(D), because the question about assets of the plan was not

properly presented to the district court. *Braden,* 588 F.3d at 602–03.

In comparison, this Court analyzed Ruppert's prohibited transaction claim pursuant to § 1106(b):

(b) Transactions between plan and fiduciary

A fiduciary with respect to a plan shall not—

(1) deal with the *assets of the plan* in his own interest or for his own account,

. . .

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the *assets of the plan.*

§ 1106(b)(1), (3) (emphasis added). As the issue was not before the court, the Eighth Circuit did not have reason to distinguish the treatment between non-affiliate and affiliate mutual fund revenue sharing payments. This Court did face the juxtaposition of the non-affiliate and affiliate mutual funds and concluded that only the Foundation Options funds were assets of the plan, based upon the approach of *Acosta v. Pacific Enter.,* 950 F.2d 611 (9th Cir.1991). [Order, Dkt. No. 183 at 37, 42.] Thus, only the affiliate funds—Foundation Options funds—could constitute a prohibited transaction.[13]

---

**13.** The *amicus* brief filed by the Secretary of the Department of Labor in *Braden* supports this finding that revenue sharing payments made from registered mutual funds are not assets of the plan. Accordingly, that Principal did not engage in a prohibited transaction with the Access Funds.

The district court did not address the question, briefed by both parties below, whether the revenue sharing payments constituted plan assets for purposes of establishing a prohibited transaction under section 406(a)(1)(D). It is the Secretary's view that

the revenue sharing payments described in the complaint do not constitute plan assets for purposes of section 406(a)(1)(D), *see* 29 U.S.C. § 1101(b)(1). Accordingly, the Secretary does not take issue with the district court's dismissal of prohibited transaction claims based on an allegation that the revenue sharing payments constituted plan assets. . . .

Brief for the Secretary of Labor as Amicus Curiae, *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585 (8th Cir.2009) (No. 08–3798), 2009 WL 964127, at *10 n. 12.

Essential to an interpretation of a prohibited transaction claim pursuant to § 1106(b), is to determine if the fiduciary is engaged in self-dealing with the assets of the plan. "[V]arious transactions involving *self dealing* are prohibited .... [especially transactions] dealing with plan assets in their own interest or for their *own* account." *Kanawi v. Bechtel Corp.*, 590 F.Supp.2d 1213, 1222 (N.D.Cal.2008) (emphasis in original). Section 1106 prevents fiduciaries from engaging in self-dealing with assets of the plan. *See, e.g., Martin v. Consultants and Adm'rs, Inc.*, 966 F.2d 1078, 1084 (7th Cir.2002) (finding that kickbacks violate section 1106 of ERISA); *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1214 (2d Cir.1987) (holding that an ERISA fiduciary violates section 1106 by receiving money from a company because of the company's dealings with the pension fund); *Stuart Park Assoc. L.P. v. Ameritech Pension Trust*, 846 F.Supp. 701, 707 (N.D.Ill.1994) (finding that fiduciary received money from the trust in a fee-splitting arrangement). In *Lowen*, the court found a violation of § 406(b)(1) when Tower Asset "invested assets of the Plans in companies in which defendants owned a substantial equity interest," and a violation of (b)(3) when Tower Securities "entered into agreements with companies to raise capital in exchange for commissions, equity interests other compensation." *Lowen*, 829 F.2d at 1214. According to *Lowen*, the " 'in connection with' requirement of Section 406(b)(3) moderates the strict common law rule that a trustee may not profit (other than from trust administration fees) from transactions involving trust assets." *Lowen*, 829 F.2d at 1214 (quotation omitted).

Having determined that revenue sharing payments from Foundation Options funds do come from assets of the plan, this Court then considered whether the payments would be exempt pursuant to § 1108. [Order, Dkt. No. 183 at 41–42.] Section 1108 allows compensation for reasonable services. Principal conceded that it performed no additional services to receive the fees, but the Court noted that Ruppert did not allege that any of the investment options had excessively high or unreasonable fees. [Order, Dkt. No. 183 at 42–43.]

Some courts have decided that § 1108's exemptions are not applicable to § 1106 prohibitions on self-dealing. *See, e.g., Kanawi*, 590 F.Supp.2d at 1223 ("ERISA § 408's exemptions do not apply to violations of § 406(b)'s prohibition on self-dealing."); *Patelco Credit Union v. Sahni*, 262 F.3d 897, 911 (9th Cir.2001) ("We conclude that the reasonable compensation provision does not apply to fiduciary self-dealing; ... Sahni received commissions from insurance companies with whom he placed Patelco's coverage, in violation of § 1106(b)(3) .... [he also] marked up those premiums when charging that expense to Patelco, in violation of § 1106(b)(1)."); *LaScala v. Scrufari*, 96 F.Supp.2d 233, 238–39 (W.D.N.Y.2000) ("The court finds that [§ 1108(c)]'s reasonable compensation exemption ... will not provide a safe harbor to a plan fiduciary ... who has allegedly violated [§ 1106(b)]."); *Daniels v. Nat'l Employee Benefit Servs., Inc.*, 858 F.Supp. 684, 693 (N.D.Ohio 1994) ("§ 1108 does not apply to § 1106(b), because fiduciaries are prohibited from receiving consideration—whether or not reasonable—from a third party for transactions involving the plan to which they owe their fiduciary obligations.").

However, the Eighth Circuit first held in *Harley v. Minn. Mining and Mfg. Co. (Harley I)*, 42 F.Supp.2d 898, 910–11 (D.Minn.1999), and then in *Harley v. Minn. Mining and Mfg. Co. (Harley II)*, 284 F.3d 901, 908–09 (8th Cir.2002), that § 1108 exemptions do apply to § 1106(b) claims. "Nothing in [the cited] authorities suggests that § 1108(c)(2)'s exemption is

inapplicable" to § 1106(b) claims. *Harley I*, 42 F.Supp.2d at 910. The court further held in *Harley II*, that "the plain language of § 1108(c)(2) sensibly insulates the fiduciary from liability if the compensation paid was reasonable." *Harley II*, 284 F.3d at 909.

■ Yet *Braden* supplemented a § 1106(a) prohibited transaction claim to hold that "statutory exemptions established by § 1108 are defenses which must be proven by the defendant." *Braden*, 588 F.3d at 601 (citing *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir.1996), *cert. denied*, 520 U.S. 1237, 117 S.Ct. 1838, 137 L.Ed.2d 1042 (1997); *Lowen*, 829 F.2d at 1215; *Donovan v. Cunningham*, 716 F.2d 1455, 1467–68 (5th Cir.1983), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984)). At least in terms of § 1106(a) transactions, the Eighth Circuit found that "the burden of proof is always on the party to the self-dealing transaction to justify its fairness." *Id.* at 602 (citing *Marshall v. Snyder*, 572 F.2d 894, 900 (2d Cir.1978)). Extending *Braden's* interpretation of § 1108 to the § 1106(b) claims Ruppert asserts here, the Court finds that in this stage of the proceedings, because Principal dealt with assets of the plan for his own account or received consideration from an-

other party through revenue sharing payments, he engaged in a prohibited transaction. Thus, following *Braden*, the Court finds that the burden of proof is on Principal to assert a § 1108 defense.[14] Accordingly, the Court need not address each of Ruppert's objections.

According to the Eighth Circuit, it is sufficient to state a prohibited transaction claim if the fiduciary improperly dealt with the assets of the plan. The Court finds that because Ruppert has asserted a plausible inference that Principal engaged in a prohibited transaction, the Court vacates its judgment on the pleadings in favor of Principal as to the Foundation Options funds.

Upon the foregoing,

**IT IS ORDERED**

Plaintiff Ruppert's Motion for Consideration [Dkt. No. 187] on Counts One and Two is GRANTED only as to the Foundation Options mutual funds.

---

**14.** The Court notes that *Braden* did not set forth the standard for the burden of proof the defendant must meet to successfully assert a § 1108 defense. But the Second Circuit held in *Lowen* that the fiduciary has the burden to prove by a preponderance of evidence that an exemption applied to the transaction or "must prove by clear and convincing evidence that compensation it received was for services other than a transaction involving the assets of a plan." *Lowen*, 829 F.2d at 1215. The evidence in the record must establish that revenue sharing payments "were used to offset Plan fees on a dollar-for-dollar basis", or else summary judgment is inappropriate. *Charters v. John Hancock Life Ins. Co.*, 583 F.Supp.2d 189, 200 (D.Mass.2008). The Second Circuit justified the clear and convincing test for two reasons:

First, when the fiduciary enters into such transactions, it has the power to arrange them in a way that dispels all ambiguity. Any doubt about a causal connection between compensation to such a fiduciary and an investment of a pension plan's assets should therefore be resolved against the fiduciary. Second, the exemptions contained in Section 408 or in regulations promulgated thereunder ought to be regarded as the usual method by which a fiduciary engages in transactions otherwise prohibited by Section 406. Accordingly, transactions that fall outside these exemptions deserve exacting scrutiny.

*Lowen*, 829 F.2d at 1215–16.